Robinson *v.* Cushman.

---

## ELIZABETH ROBINSON *v.* CUSHMAN, adm'r of Jones.

An admission contained in an *undelivered* instrument is not binding upon the party
whose hand and seal are attached to it.

The plaintiff in an action for work, labor and services, relied along with other evi-
dence upon a sealed note found among the papers of the defendant's intestate,
but which had not been delivered, by which he *in terms* promised to pay the
plaintiff $2000 "for value received and justly and truly due her for services
rendered me during my illness." *Held* very slight evidence as an admission of
the fact stated; and the other proof in the cause showing that nothing was then
due the plaintiff, *held further* that she was not entitled to recover.

MOTION by defendant to set aside the report of a sole referee.
The action was assumpsit for the work, labor and services of
the plaintiff in the family of the intestate during his life time.
The plaintiff was the sister of Jones the intestate, and in June,
1829, she was a widow, with one daughter aged two or three
years, and resided at Petersburg in Virginia. Her husband had
been dead about six months. She had one hundred dollars in
money, and no other estate. Jones resided and was in business
in the city of New-York: he invited the plaintiff to come and
make his house her home. The plaintiff went there with her
daughter in June, 1829, and remained in the family of her

Robinson *v.* Cushman.

brother until he broke up housekeeping in May, 1843—nearly 14 years. Mrs. Jones died in 1838, and Jones himself died suddenly in December, 1843. During all the time the plaintiff was in the family of her brother she assisted generally in the affairs of the family—rendering such services as are usually rendered by a housekeeper. She was particularly kind and attentive to her brother, who had had an attack of paralysis in 1827, from which he had not entirely recovered ; though he was well enough to be engaged in active business. After the plaintiff went to live with her brother he had an attack of inflammatory rheumatism, which lasted three weeks. He had no other sickness of any importance. There was no proof of an agreement to pay wages ; nor that the plaintiff expected to receive any. A great deal of evidence was given in relation to the nature of her services; and their value was estimated by the witnesses at from $8 to $12 a month. Jones furnished her with clothing, the value of which was estimated by the witnesses at from $100 to $150 per year. Jones also boarded, clothed and paid the school bills of the plaintiff's daughter. The daughter's clothing was estimated by the witnesses at from $40 to $50 per year ; and her board at different ages from $50 to $125 a year. Various school bills which Jones had paid for the daughter from 1838 to 1841, were given in evidence, amounting to $160 and upwards. How much he had paid at other times did not appear.

On the 1st of May, 1840, Jones executed a sealed note as follows :—" $2000. One day after date I promise to pay to my sister, Mrs. Elizabeth Robinson or order, the sum of two thousand dollars, for value received *and justly and truly due her for services rendered me during my illness.* Witness my hand and seal this first day of May one thousand eight hundred and forty. Isaac Jones. [L. S.]

In presence of W. M. Gawtry."

The subscribing witness, Gawtry, was at the time the partner in business of Jones. Gawtry testified that he drew the note from the dictation of Jones, who said at the time *it was for services rendered.* After Jones had signed the note he sealed

it up in an envelope, which he marked "private," and deposited it in his iron chest, where it was found after his death—it never having been delivered, nor did it appear that its existence was known to any one but Jones and Gawtry.

Miss Susan Rosette, a witness for the plaintiff, testified that Jones said the plaintiff's services " were invaluable to him, at times. He said she had been with him a long time. He did not feel that she was paid for her services. He wished an estimate made. He asked me what I thought was just. I said he could judge as well as any one. He said he wished to make her a compensation. He said he paid his cook $6 a month: that Mrs. Robinson was his housekeeper and nurse. *In estimating he spoke of $10 per month. He mentioned the sum of two thousand dollars, and said, ' she is my sister.'* This, I think, was in 1840 or 1841." The witness said she should think the plaintiff's services worth $10 a month : that the board of her daughter was worth from eight to twelve shillings a week. On cross-examination the witness was asked, " Did Mr. Jones in that conversation say *that Mrs. Robinson had no means for her future support,* or any thing to that effect?" The witness answered—" *He did make remarks to this effect. He said she was his sister, and he was anxious for her.* He spoke of taking papers from her that he had given her for a place at Bridgeport, Connecticut. He sat with his pencil in his hand and made an estimate what her work would come to, and made that remark when he left the house. I think he sat in this way, and made a motion so, and said, ' *about $2000 for Mrs. Robinson, Susan.'* "

The referee reported that $2000 was due the plaintiff. He gave a written opinion, placing his decision wholly on the admission contained in the sealed note, and the testimony of Gawtry and Miss Rosette as to the verbal admissions of Jones. Independently of those admissions, he was of opinion that the plaintiff went to her brother's on an invitation to make his house her home ; that she rendered services, and Jones furnished her and her daughter with clothing, and paid school bills and other expenses, without any supposition either by the

plaintiff or Jones, that an account was to be kept or rendered on either side, or any charge to be made by either against the other. But the referee thought he was bound by the unqualified admission of indebtedness; and that Jones was competent to fix the amount, as he did, at $2000. The referee regarded this as amounting, in effect, to the stating of an account, although the plaintiff was not present.

*J. S. Bosworth,* for the defendant, moved to set aside the report.

*S. L. H. Ward,* for the plaintiff.

*By the Court,* BRONSON, Ch. J.   Jones, the intestate, invited his widowed and almost destitute sister to come and make his house her home. The plaintiff accepted the invitation and remained with her brother nearly fourteen years. During all that time the brother provided in a suitable manner for his sister and her daughter; and the sister made such returns as were in her power, by rendering herself useful in the family. Neither at the commencement nor in the progress of these mutual acts of kindness, did either party think of such a thing as a contract of hiring; or that any legal obligation existed, or was springing up between them. They were brought and kept together and made useful to each other, by the law of love, and by that alone. Such is the conclusion to which my mind has been irresistibly drawn by a careful examination of all the evidence in the case.

There is some reason to believe that the intestate was under a delusion at the time he made the sealed note. He was careful to express the consideration for making it; and yet he has not mentioned the only consideration which is now relied on; to wit, the services of the plaintiff for the eleven years which had then elapsed. The intestate did not mention services generally, but "services rendered me *during my illness.*" This seems to point to the paralytic attack which the intestate had in 1827, which was two years before the plaintiff came from

Virginia. Although the intestate never wholly recovered from that shock, he was well enough to be actively engaged in business: and he had no particular illness of any importance while the plaintiff was in the family, except an attack of inflammatory rheumatism, which lasted three weeks. At this time a man was specially employed to take care of him; and his mother-in-law was also in attendance night and day. Although the plaintiff undoubtedly bestowed some care on that occasion, it is hardly probable that the intestate meant to point to that as the consideration for an undertaking to pay two thousand dollars.

But if we suppose that the intestate intended to mention services generally as the consideration of the note, the instrument will not prove much. It is of no value as an obligation, for the reason that it was never delivered. And for the same reason, I think it of little or no value as an admission. In point of form, the instrument contained both an express undertaking to pay a sum of money, and an admission that the money was justly due for services rendered. But by carefully retaining the paper in his own possession, the intestate virtually declared that it was neither to bind him as an obligation, nor affect him as an admission. I will not say that such a paper must, under all possible circumstances, be laid entirely out of view. But while it confessedly has no force as a contract, it cannot be right to give it, under the name of an admission, all the effect of a binding obligation.

What the intestate said to Gawtry at the time the note was made, is no more than is expressed in the note itself. He said " it was for services rendered." But he did not say that he was under any legal obligation, expressed or implied, to pay for those services. And it is entirely clear from the other evidence in the case that there was no such obligation. The testimony of Miss Rosette, which is deemed so favorable to the plaintiff, does not show an existing legal duty or indebtedness on the part of the intestate. He did not say that he had ever agreed to pay the plaintiff any thing, nor that her services had been rendered under such circumstances that the law would imply a promise to pay for them. The key to the whole matter will

be found in his remark, that "Mrs. Robinson has no means for her future support: she is my sister and I am anxious for her." And after making an estimate "he mentioned the sum of two thousand dollars and said"—not that this was a debt which he owed—but, "*she is my sister.*" That was evidence of a good heart, but not the acknowledgment of a legal obligation. These confessions must not be separated from all the other evidence in the case; but the whole must be considered together: and then it is clear that instead of regarding himself as a debtor, he was debating in his own mind whether he should not make a *gift* to his sister. He died without ever having settled that question. He went so far as to sign a covenant to pay her two thousand dollars; but he took care to retain the instrument in his own possession, so that it never acquired vitality. He may have doubted his ability to make the gift, or deemed it a questionable act in reference to the possible claims of creditors, or the wants of his own family. But we need not speculate about what was passing in his mind. It is enough that he never delivered the note.

There is another view of the case which is equally fatal to the plaintiff's claim. Let it be granted that the services were performed upon a contract of hiring, or under such circumstances that a promise to pay, *quantum meruit,* may be implied. Then the answer to the action is, that the plaintiff has been fully paid, and a good deal more. Her services, taking the highest estimate of her own witnesses, were only worth twelve dollars a month, amounting to $144 a year. And she has been paid for her clothing and the clothing, board and school bills of her daughter, $250 a year at the least. If the plaintiff chooses to forget the relation of brother and sister, and the feelings of mutual kindness under which both parties acted—if she desires to place herself upon the footing of a servant laboring for wages, she must then consent to have the account between herself and the intestate fairly stated ; and that will show her a debtor in a balance of about fourteen hundred dollars.

But it is said that an account was stated by the intestate, and a balance of $2000 struck in the plaintiff's favor. That is.

saying too much. The intestate made an estimate of the value of the plaintiff's services without at all taking into the account the compensation which she had received. Indeed, it is evident that he did not think of such a thing as the adjustment of a balance between parties under legal obligations to each other. He not only omitted the whole of one side of the account, but he fixed on a sum for the other side which was a good deal more than his own estimate of what would be right. The sum which he mentioned as a proper compensation to the plaintiff was $10 per month, which for the eleven years that had then elapsed, would amount to only $1320; and yet he settled upon the sum of $2000 for the plaintiff, and said, " She is my sister." He was not stating an account, or even one side of an account; but balancing in his own mind what provision, as a matter of bounty, he should make for his sister.

But let it be granted that the intestate admitted not only that the plaintiff's services were worth $2000, but that a balance of that amount was due to her, still it was nothing more than evidence, which must go for what it is worth. It was not a conclusive admission. And it must not be considered alone, but with the other evidence in the case. And if we look at all the evidence, it is entirely clear that the plaintiff has been fully paid for her services.

We see no ground on which the report can be supported.

Motion granted.