WILLIAMS *vs.* HUTCHINSON.

A step-father is not entitled by law to the custody or services of the children of his wife by a former husband, nor is he bound to maintain them.

But where a step-father assumes the relation of a parent to the child of his wife by a former husband, and faithfully discharges the duties of that relation by receiving such child into his family and educating and supporting him on the same footing as his own children by a former wife, and where there is no express agreement to pay wages to the step-child, he cannot maintain an action against the step-father for services rendered while a minor, although the value of the services may exceed the expenses of such education and support.    Under such circumstances a promise to pay wages will not be implied.

Williams *v.* Hutchinson. ·

It seems that a person standing *in loco parentis* may maintain an action for the seduction of the child. So also, it seems, he is liable for necessaries furnished to his adopted child to the same extent as though they were furnished to his own children.

APPEAL from the supreme court, where the action was assumpsit for work and labor. The cause was heard before a referee, and the facts found by him were as follows: The defendant married the plaintiff's mother, a widow, in the year 1834, and lived with her until her death in 1842. The plaintiff at the time of the marriage was eleven years old, and he lived in the defendant's family until his mother's death, and this action was brought to recover the value of his services during that time. At the time of such marriage the mother had three sons, and the defendant had four, and they all lived in his family together. The step-children were clothed and schooled and treated in all respects the same as the other children, and performed labor for the defendant suitable for children of their age and condition. The defendant was a farmer, and carried on his farm with the assistance of this labor. There was no express agreement or understanding that the plaintiff should receive wages, or account for his board, schooling or clothing; nor were any accounts kept on either side. The value of the plaintiff's services, as found by the referee, over and above the value of his board, clothing and schooling, and all other set-offs against him in the defendant's favor, was $146,81; but he reported that there was nothing due from the defendant to the plaintiff on the ground that, under the facts proved, the law would not imply a promise to pay. Judgment having been entered according to the report in the defendant's favor, the plaintiff appealed to this court.

*E. Van Buren,* for appellant. I. The step-father is not entitled to the services of the child by her former husband. (*Freto* v. *Brown,* 4 *Mass. R.* 675; *Worcester* v. *Merchant,* 14 *Pick.* 510; *Gay* v. *Ballou,* 4 *Wend.* 403.) The reason of the rule is that the step-father is not bound to support the child of his wife by a former husband. (*See authorities above cited; also*

*Tub et al.* v. *Harrison,* 4 *T. R.* 118 ; 4 *East,* 76.) Nor is the mother entitled to the services of her child after marriage. She can not after marriage be compelled to support her children. By her marriage she ceased to have the power of controlling her own actions, and the power of supporting and educating her children. (*See cases above cited.*

II. An express promise need not be proved, nor need an express promise be implied ; where an express promise exists, there is no necessity of an implied promise. An *implied* promise is one which the law raises, founded upon the justice of the transaction. (*Story on Cont.* § 12; *Greenl. Ev.* 102, 108 ; *Guild* v. *Guild,* 15 *Pick.* 129 ; *Peter* v. *Steele,* 3 *Yeates,* 250 ; *Cook* v. *Husted,* 12 *John.* 188.)

III. There is nothing in the case to show that the plaintiff intended to render the services voluntarily ; and if there was, it would not conclude him, because he was an *infant.* An infant can not bind himself by an *express* agreement, and of course he can do no acts which will repel an implied promise. If he had made an express agreement to work for nothing, it would not bind him ; and can he by his acts raise a valid· *implied* agreement which would be void if expressed ? The law is his guardian and repudiates all his contracts. " He is not bound to the extent of his contract even for necessaries, he is only liable for what they are worth." (*Cro. Eliz.* 583.) " A negotiable *note* given by an infant even for necessaries is void." (*Swasey* v. *Adm'rs of Van Derheyden,* 10 *John.* 33.) " An infant may avoid a usurious contract entered into by him and recover the money lent under the contract, for money had and received." (*Millard* v. *Hewlett,* 19 *Wend.* 301 ; *See also, Medbury* v. *Watrous,* 7 *Hill,* 110.) The plaintiff did not stand "*in loco parentis*" as against the infant. That relation can only be created by an agreement *express or implied.* If an infant is incapable of contracting, then he can not contract this relation.

It is true that where a person stands "*in loco parentis*" he may make himself liable to *third persons* for necessaries furnished the infant, upon the ground that he holds himself out to the

world as standing in that relation, but that does not bind the infant.

*J. N. Whiting & T. R. Strong*, for respondent. I. The services for which this action was brought having been rendered while the plaintiff was an infant, living with his mother and his step-father, the defendant, into whose family he had gone upon their marriage, and while he was supported and maintained by the defendant in all respects as the defendant's own children, and there having been no express agreement or understanding that the plaintiff should be paid for his services, this action can not be maintained. Under such circumstances the law will not imply a promise to pay for the services.

The general rules of law in regard to the right to the services of an infant, are, that they belong to the father during his life, and in case of his death, to the mother if she survive him. (*Nightingale* v. *Withington*, 15 *Mass. R.* 272, 274 ; *Dedham* v. *Natick*, 16 *id.* 135, 140.) But if the mother marries again, they belong to the infant ; (*Freto* v. *Brown,* 4 *id.* 675 ; *Commonwealth* v. *Hamilton*, 6 *id.* 273, 275 ; *Worcester* v. *Merchant*, 14 *Pick.* 510 ;) unless he is received into the family of his step-father as a child and supported as such, in which case they belong to the step-father. (*Stone* v. *Carr*, 3 *Esp. R.* 1 ; *and see cases referred to in* 5 *Barb.* 122.) This right is allowed to these several persons in the cases mentioned, on account of the obligation which the law casts upon them respectively in those cases to support the infant. The father during his life is subject to this obligation ; after his death it devolves upon the mother ; but if she marries again, her legal existence becomes merged in that of her husband, who also acquires a right to her property, whereby her capacity to discharge the obligation ceases, and thenceforth the obligation is confined to the infant, unless the step-father receives him into his family and treats and supports him as a child ; in which case he stands *in loco parentis* to the infant, and in law assumes the parent's obligations. (*See above authorities.*)

The step-father is not bound to support his wife's infant children; but if he voluntarily places himself *in loco parentis* to them, he subjects himself to a parent's duties in respect to their support while that relation continues. (*Same authorities.*) Neither is an infant bound to allow a step-father to place himself in that relation, or to continue it if once formed, any longer than the infant chooses.

The liability of a step-father who stands *in loco parentis* to an infant step-child for his support, is not affected any more than that of a parent by the consideration that the infant does or does not render an equivalent in services for the support he receives—he is equally liable for support whether services are or are not rendered in return. He can not any more than a parent call upon the infant for any balance in his favor if the support exceeds the value of the services: nor is he any more than a parent bound to account to the infant for the balance, if the services of the infant exceed the value of his support. His rights and obligations in respect to services and support are precisely coextensive with those of a parent, while he sustains the relation of parent to the infant.

It is doubtless competent to a step-father and his infant step-child to have an understanding in regard to services and compensation which the law will enforce; but in such a case the parties do not stand in the relation of parent and child solely, if at all—something is superadded by agreement. (*Gay* v. *Ballou*, 4 *Wend.* 403. The same it is believed would be true in regard to a father and his infant child, but for the fact that the obligation of the father to support, and his right to the services of the child, do not depend upon the will of either, with the single exception that a parent may relinquish his right to the services of his child. (*Shute* v. *Dorr*, 5 *Wend.* 204, *and cases cited.*) When he has relinquished his right, and an understanding is thereafter had between them that the child shall be compensated for his services, no good reason is perceived why the law should not enforce it.

The case at bar is one in which the defendant stood *in loco*

*parentis* to the plaintiff, and fully discharged his obligations arising out of that relation while the services in question were rendered, and there was no other relation between the parties by agreement or otherwise; and if the foregoing principles be correct, they are decisive of the case against the plaintiff.

PRATT, J. It is well settled that a person is not entitled to the custody or earnings of the children of his wife by a former husband, nor is he bound by law to maintain them; but these principles alone are by no means decisive of the question now before us. The parent is not legally entitled to the custody or earnings of his children after they arrive at the age of twenty-one; nor is he entitled to the earnings of, or bound to maintain, his nephews or nieces; yet if they live with him as members of his family without any contract or understanding that he shall pay for their services or receive pay for their maintenance, the law will not imply a promise to pay on either side. (*Robinson v. Cushman,* 2 *Denio,* 149; *Andrews and wife* v. *Foster,* 17 *Verm. R.* 556; *Fitch* v. *Peckham,* 16 *id.* 150; *Owen* v. *Parsons,* 5 *Watts & Serg.* 357, 513; *Wier* v. *Wier,* 3 *B. Munroe,* 645.)

The learned judge who wrote a dissenting opinion in the case of *Williams* v. *Hutchinson,* (5 *Barb.* 122,) a younger child against the same defendant, conceded the law to be as held in those cases, when applied to adults; but he contended that when applied to cases of infants, who were not competent to contract or bind themselves, a different rule should prevail; that those cases proceed upon the principle that there is an understanding or assent to the arrangement, and a waiver of those legal rights which would otherwise exist; that as no such understanding or assent can be implied in the case of an infant, the law will imply a promise to pay whenever a benefit has been received. I can not concur in the conclusion to which the learned judge arrived in that case.

I. A contract or promise to pay, as a matter of fact, requires affirmative proof to establish it. Under certain circumstances,

when one man labors for another a presumption of fact will arise that the person for whom he labors is to pay him the value of his services. It is a conclusion to which the mind readily comes from a knowledge of the circumstances of the particular case, and the ordinary dealings between man and man. But where the services are rendered between members of the same family no such presumption will arise. We find other motives than the desire of gain which may prompt the exchange of mutual benefits between them, and hence no right of action will accrue to either party, although the services or benefits received may be very valuable. And this does not so much depend upon an implied contract that the services are to be gratuitous, as upon the absence of any contract or promise that a reward should be paid. So far then as it depends upon any presumption of fact the difficulty is as great or greater in the case of an infant than an adult.

II. But it is insisted that the law will imply a promise to pay in many cases even against the will of the person sought to be charged, when reason and justice dictate that he should pay, and the reasoning of the dissenting judge is mainly based upon this proposition. The proposition is undoubtedly correct, but the difficulty is that it is not applicable to the circumstances of this case. If the facts of this case show that the defendant has received the valuable services of the plaintiff for which he has rendered no corresponding benefit, different considerations might arise. But is that so? Is the calculation in dollars and cents the only consideration which this court is authorized to take of this case? The plaintiff, at the tender age of eleven years, was adopted into the family of the defendant, and treated in all respects as one of his own children. Suppose at that time the alternative had been presented to some friend of the child, whether he should be cast into the world to take care of himself, or follow his mother into the family of the defendant, to be clothed, educated and cared for; nay more, suppose the alternative had been presented to that friend, whether the child should follow his mother and live in the family of the defendant until the age of nineteen, and be treated in

Williams *v.* Hutchinson.

all respects as the finding of the referee in this case shows he was treated, or go into the family of a stranger under an arrangement that he should receive pay for the value of his services, and be charged for every thing which he received, would that friend have hesitated recommending the arrangement and disposition of the child which was actually made in this case, in preference to the one above supposed. If we look at the actual result, the case is not changed. The referee, it is true, has found, that in dollars and cents the value of the services exceeds the cost of maintenance; but these are not the only benefits which the plaintiff has received. There are considerations growing out of the relation which the parties sustain to each other which can not be computed in money. To say nothing of the benefits derived from a father's care and a mother's love, of the thousand joys which can only be found by the dutiful child in that sacred sanctuary called home, is it nothing to be trained up in those habits of industry, in that knowledge of business which fit a child for the actual duties of life? I should feel much more inclined to hold a man standing in loco parentis responsible, who had furnished his adopted child with all needful food, clothing and education, and had neglected to train him up in habits of industry; and yet, according to the doctrine contended for by the counsel for the appellant, the assumed parent could recover for necessaries furnished under these circumstances. "A parent," says a commentator no less renowned for his great legal learning, than for his just appreciation of the duties growing out of the family relations, "who sends his son into the world uneducated and without skill in any art or science, does a great injury to mankind as well as to his family, and defrauds the community of a useful citizen and bequeaths to it a nuisance; and it is said that Solon was so deeply impressed with the force of the obligation, that he even excused the children of Athens from maintaining their parents if they had neglected to train them up to some art or profession." (2 *Kent,* 195.)

We therefore fail to find in this case that want of reciprocity in the benefits enjoyed by the parties growing out of the rela-

tion which existed between them, which would from dictates of reason and justice imply a promise to pay. It is not to be im plied from the fact that the defendant has been benefited and not injured by his generosity ; for it is a subject of gratification, rather than regret, that both parties have probably been benefited by the relation which has existed between them.

It is said that injustice might in some cases be done by one claiming the benefit of the parental relation, that he might receive the services of the child so long as he continued in health, but if sickness should overtake him, or if for any cause he should be unable to render services which would be profitable to the parent, the latter might dissolve the relation, and compel the child to ·take care of himself. It will be time enough to decide that case when it arises. Our views in this case are based upon the assumption that the defendant stood in loco parentis, and has faithfully discharged the duties appertaining to that relation. Had he been guilty of flagrant injustice, had he failed to discharge faithfully the duties which he had assumed, different considerations would arise ; but the case shows that the plaintiff was during the whole time treated in all respects the same as the other children of the defendant, and there is no evidence that he did not in all respects discharge the duties of a father faithfully and honestly.

III. The counsel for the appellant assumes that the plaintiff, because he was an infant, could not consent to any arrangement by which he should waive the right to claim wages for his services. This is not correct. An infant may enter into a binding contract which is clearly for his benefit. (2 *Kent,* 236 ; 1 *Mason,* 82 ; 2 *H. Black.* 511 ; 1 *T. R.* 161.) He may contract for necessaries, or bind himself as an apprentice, and will not be allowed to avoid his contract. (3 *Barn. & Cress.* 484.) It being clearly for the benefit of the infant that he should be· provided with a home, any contract beneficial to himself which he might make for that purpose, would be binding. This case would therefore come directly within the principle decided in the cases first cited, and which are conceded by the counsel for the appellant to be founded in correct legal principles.

Williams *v.* Hutchinson.

IV. The authorities sustain the positions we have taken. It has been frequently held that where a man stands in loco parentis, he is entitled to the rights and subject to the liabilities of an actual parent, although he was not legally compelled to assume that relation.    Thus he can sustain an action for seduction, and is not restricted to the actual damages sustained for the loss of service, but the same rule of damages applies as in the case of an actual parent.

So he is liable for necessaries furnished to a child standing in that relation, to the same extent that he is liable for necessaries furnished to his own.

The policy of the law seems to be to encourage and protect that relation—to encourage an extension of the circle and influence of the domestic fireside.    And unless compelled by some rigid rule of law, we should not by our decision establish a rule calculated to deter the husband from adopting his wife's children, by a former marriage, into his family.    The marriage with the mother, it has been held, severs the relation which would otherwise exist between her and her children, as guardian of their persons.    If, therefore, the husband voluntarily adopts them into his family, educates and supports them, and discharges his whole duty towards them as a parent and a good citizen, the law should be liberally construed in his favor.    It is a disposition of the children which must add vastly to the happiness of the mother, and to the children its advantages can scarcely be estimated.    In the language of the same learned commentator cited above, "Under the thousand pains and perils of human life the home of the parents is to the children a sure refuge from evil and a consolation in distress."

We are of opinion, therefore, that the judgment of the supreme court should be affirmed.

Judgment affirmed.