By the Court—Bosworth, Ch. J.
The meaning of the second and third findings of fact, is not so perspicuous as to place it beyond criticism.
All that the second necessarily imports, is, that the vaults were built of the size, in the form, and of the materials required by the contract. It does not state that the plaintiffs did this work *195 in a “ good, substantial and workmanlike manner.” This they, in the body of their contract, agreed to do.
As the third finding states, that “ the work done,” “ did not produce a good and substantial building;” “that the walls and vaults were defective, the former bulging very much and requiring external braces to support them; ” and as the facts found suggest no cause for these marked defects, except “the work done,” the only meaning which we can attach to these two findings is, that the work was defectively performed; and that in consequence of such defective performance the walls bulged and required external braces to support them.
The Referee’s report contains some statements which, it is claimed, show that the second finding was designed to declare as a fact that the work was really done in a workmanlike manner, and that whatever was unsubstantial or defective was the fault of the plans; and not of the manner in which the work was executed.
Even if this construction of the report be correct, we are of the opinion that if its statement of the facts found, differs from that inserted in the case by the Referee on settling it, as required by sections 272, [227,] 268, [223,] of the Code; either in that the one specifies some facts not found in the other, or in that some of the facts are stated differently in the one from what they are in the other, the court should look at the facts stated in the case by the Referee on settling it, as the facts actually found by him.
In that part of the “ report ” which professes “ to find and report ” the facts proved, there is no statement either in form or substance corresponding with the third finding contained in the “case” itself. In the commencement of the “report” conclusions are stated substantially corresponding with the third finding; and in that part of the “ report ” the Referee, after specifying the positions taken by the parties as to the cause of the defects, and commenting upon the evidence given in relation to them, remarks, that he thinks, “on the whole, that the plaintiffs have shown a substantial compliance with the contract on their part.”
We think the “report” cannot be resorted to for the purpose of imputing, by the aid of its contents, a meaning to the finding of facts inserted in the case on settling it, which could not be *196 given to them by any natural construction of the language in which they are stated.
If these views are correct, then it follows that, as their contract in terms required them to do the work in a good, substantial and workmanlike manner, and especially as the specification forming a part of the contract declares that, “ if anything is left out in this specification that is required to make the vaults and cellar a good and substantial lager bier building, the mason agrees to do it,” and inasmuch as it is found that the building, as the plaintiffs left it, ‘‘was not a good and substantial building,” but, on the contrary, the walls were so defective that they bulged and required external braces to support them, the plaintiffs cannot recover without the further fact being found that the work was done in a good, substantial and workmanlike manner, and that vaults good and substantial could not be made by conforming to the plans and specifications which the plaintiffs were bound to follow.
Whether a party who agrees to erect a building according to a designated plan and specifications, and to make it good and substantial, but fails to erect one which can stand without external braces to support it, can recover, if he has conformed to the plans and executed his work well, is a question which it is unnecessary to decide. For, assuming that he can, we are of the opinion that the Referee’s conclusion of law, upon the facts which he has found, is erroneous. We are not satisfied with the Referee’s finding that the $8,500 of cash paid was all paid on this contract. Whether it was or not, depends upon the question whether the $1,000 paid on the 15th of November, 1856, was wholly paid on this contract, or whether only half of it was, and the other half on account of “the brewery and stable” which the plaintiffs were erecting under a contract dated the 10th of November, 1856.
Hartman testifies that the payment of $1,000, on the 15th of November, was an overpayment of $500; that “ the defendant said he was able to pay the whole of the amount due on the contract without giving a mortgage; the defendant said the $500 overpaid was on account of the amount coming to us on the mortgage.”
The defendant testified that he never said any such thing; that “Mr. Hartman at that time said he was in want of money, and if I would give him $500, on account of the brewery, he would *197 not ask for more until the brewery was done.” * * “ I gave it to him, and told him it was on account of the brewery.”
The plaintiffs’ receipts for this and the two previous payments were produced. That of October 4th, for $1,000, and that of November 1st, for $1,500, states that those payments are “ on account for building his brewery cellars,” while that of November 15th, for $1,000, states that it is “ on account for his buildings.” The difference in the terms of the receipts, and the phraseology of the last receipt, favor the accuracy of the defendant’s version of the matter. Besides this, the Referee allowed the defendant to read a paper writing, signed by Hartman on the 23d of December, 1856, “ as admissions by a party to the actionand that paper states that the $3,500 was paid “ on account of the said contracts, and of a claim of five hundred dollars for extra work performed on the said building," and that a bond and mortgage for $2,500 was to be given on the completion of the building.
Whether this writing was rightly received in evidence or not, it is unnecessary to determine. (2 Denio, 149.)
It was admitted in evidence as containing admissions of Hartman ; the admissions contained in it were made after the money was paid and receipt given, and if the slightest weight is attached to them, it must be conceded that as the defendant directly contradicted Hartman as to the purpose or account, for or on which the extra $500 was paid, and as the defendant was corroborated and Hartman was not, the Referee’s finding that the $500 was paid on account of the sum for which the mortgage was to be given, is contrary to evidence.
It is not found that the defendant was asked or refused to give a bond and mortgage for $2,500, and unless he so refused, no action would lie before the expiration of the year to recover any part of that sum.
We think the Referee was right in holding that no such agreement was made as the paper writings of the 23d of December, 1856, import.
The papers were not to be delivered until the one signed by Hartman was signed by his partner also. I think Mr. Cowdrey held the papers in escrow and quo ad hoc, as a stranger to all of them. While so held, the paper signed by Hartman was not his agreement, nor an agreement of his firm. (2 Denio, 149.)
*198 But I think a new trial should be granted on the grounds that the facts found do not entitle the plaintiffs to recover on the first cause of action; and that the finding that the overpayment of $500 was made on account of the $2,500, to be secured by the bond and mortgage of the defendant, is contrary to evidence.
Ordered accordingly.