*The accounting in* MARGARET KELLY's *Estate.*

THE policy of our law discourages claims for labor and service among and between near relatives, and looks with suspicion upon the presentation of such claims against the estates of deceased persons.

TULLY & QUINN, *for Claimant.*
Mr. MALCOLM, *for Guardian of Infants.*
Mr. TRAPHAGEN, *for Rosanna Kelly.*
Mr. FOLEY, *for Patrick Kelly.*

THE SURROGATE.   James Kelly, the petitioner, and who is the executor under the will of Margaret Kelly, deceased, claims to be a creditor of her estate to the amount of $892, " for board, rooms and maintenance of said deceased and her granddaughter, Margaret."   The petitioner is the son of the testatrix; and the granddaughter is his niece. The amount claimed for board, etc., of the testatrix is $572; and that for the girl is $320.

It appears that his mother came to live with the petitioner in his family soon after the death of his wife, and brought with her the girl; that they were treated like other members of his family, and that they remained there respectively for the length of time for which he charges the estate; it also appears that there was no agreement or understanding as to compensation for their board, etc., and that nothing was ever said or done in testator's lifetime, evincing any expectation of pecuniary compensation on the one side, or intention to make it on the other.

It further appears that the petitioner is a man of means, and that the testatrix had means sufficient for her support; there was, of course, no obligation on the petitioner to support his mother, who was able to support herself; still less his niece, who had no legal claim upon him.

In the absence of all agreement or obligation, the question is, does the law, from the state of facts, imply a

liability on the part of the testatrix, or her estate, for the present claim, or any part of it?

The general rule is, that it is enough *prima facie* to show labor performed, services rendered, etc., in order to raise an implied assumpsit to pay. But this implication is demolished, if the parties understood or intended that no compensation was to be made. (*Williams* v. *Finch*, 2 *Barb.*, 208; *Livingston* v. *Ackerston*, 5 *Cow.*, 531; *Dunbar* v. *Williams*, 10 *John.*, 239; *Batholemew* v. *Jackson*, 20 *John.*, 28; *Evarts* v. *Adams*, 12 *John*, 352). What was the intent of the parties in respect to making or exacting compensation in this case is a fact which I must determine from the evidence.

Their near relationship, in itself, is sufficient, in my judgment, to warrant the inference, that the most natural and generous motives induced the petitioner to receive his mother into his house. His household had recently been made desolate by the loss of his wife, and it is but justice to assume that he anticipated social remuneration for the services he might render from the society of these two female relatives. The absolute silence preserved by all parties, as to money payment for this board and lodging, during the life time of the testatrix, is another strong point against the claim now set up. All the circumstances of Mrs. Kelly's residence in her son's family indicate that her son "induced her," as he says, "to come to his house for the purpose of taking care of her," and that both his invitation and her acceptance of it originated in motives of natural affection.

A presumption exists against claims of this nature, brought forward after the death of one of the parties, and the Courts have uniformly shown distrust towards them, Our Courts have rejected demands similar to this in many instances, and have admitted none, so far as I have been able to find, without affirmative proof of a distinct understanding to pay money.

A case somewhat analogous is that of *Williams* v.

*Hutchinson*, 3 *Comstock*, 312. The plaintiff was stepson to defendant, and brought his action to recover the value of his services while a member of defendant's family. There having been no agreement made between the parties as to compensation, the Court of Appeals held that none could be implied from the facts of the case, although the referee below had found, as matter of fact, that the value of defendant's services over and above what he had received from defendant in the nature of board, clothing, schooling, and other set-offs, was $146.81. In this case Mr. Justice Pratt, who delivered the opinion of the Court said :

"A contract or promise to pay, as a matter of fact, requires affirmative proof to establish it. Under certain circumstances, when one man labors for another, a presumption of fact will arise that the person for whom he labors will pay him the value of his services. It is a conclusion to which the mind readily comes from a knowledge of the circumstances of the particular case, and the ordinary dealings between man and man. But where the services are rendered between members of the same family, no such presumption will arise. We find other motives than the desire of gain, which may prompt the exchange of mutual benefits between them; and hence no right of action will accrue to either party, although the services or benefits received may have been very valuable."

The case of *Robinson* v. *Cushman*, *administrator*, 2 *Denio*, 149, is another strong authority against the allowance of this claim. The plaintiff there was the widowed sister of the testator, who invited her to come and make his house her home. She went accordingly with her daughter, and both remained in his family as members thereof for about fourteen years; they rendered services to him, and were clothed by him, and the daughter educated as one of his children. On the trial before the referee, the mother made proof of the value of her services to some extent, but relied mainly upon a sealed note of the

testator for $2,000 payable to the plaintiff or her order, expressing as its consideration services rendered to the maker, etc. This note was never delivered to the plaintiff, but was found among the testator's papers after his decease, and was chiefly relied on as the evidence of the acknowledgment of an indebtedness. The referee reported in favor of the plaintiff for $2,000, the amount of the note. There was no evidence of any agreement between the parties except the inference to be drawn from the execution of the note. The report of the referee was set aside; Judge Bronson delivering the opinion of the Court.

It is evidently the policy of our law to discourage these claims for labor and services among and between near relatives, members of the same family. Litigation among parties so nearly connected may be almost said to be *contra bonos mores*. Relatives between whom a deed for the consideration of "love and affection" might be made, ought not to be encouraged to prosecute each other, or the estates of the departed, for board, lodging, clothing, education, or any of those pecuniary expenses, which in most families are rendered without other expectation of reward than the enjoyment of mutual comforts and interests.

Our statute law has sternly set its face against claims of this nature. It allows no executor or administrator (such representatives of the estate generally being relatives of the deceased,) to pay himself any claim whatever without its previous allowance by proceedings like this. It prohibits the survivor, when a claimant, from proving his claim by his own evidence, and the current of our decisions, as I have shown, is to the effect, that when a claim like that of the present petitioner is made, unsupported by affirmative evidence of a contract, no assumpsit will be inferred.