Haight, J.
The decree was rendered upon a final accounting of the appellant as the former guardian of Prudence L. York, a minor. It appears from the undisputed evidence in the case that the appellant, Henry C. Ackerman, was appointed general guardian of Prudence L. York, a minor, on the 5th day of February, 1867; that at that time he resided upon a farm in Huron, Wayne county; that his family consisted of himself and wife, his son, Charles S. Ackerman, and his wife, Elizabeth Ackerman, the respondent, and Prudence L. York, then aged about three years, the daughter of the respondent by a former husband; that the families continued to five together as one family *182 until the year 1874, the respondent and her husband working the farm on shares, the appellant furnishing half of the table expenses; in the fall of 1874 the family separated, the appellant moving into another house; Charles S. Ackerman, the appellant’s son, continued upon the farm, his step-daughter living with him; the families continued to live in this way until June, 1883, when the respondent separated from her husband, Charles S. Ackerman, taking her daughter with her; the appellant, as guardian, received from the government as pension for the minor a pension payable quarterly, amounting in the aggregate to $1,544.26. The acting surrogate has found as a fact, “that during said Henry C. Ackerman’s said guardianship, said Prudence L. York was boarded in the family of her mother and Charles Ackerman, her step-father, a portion of which time Henry 0. Ackerman’s family, lived together, and a portion of the time separated; that there was no express agreement that said Prudence L. York should be charge • able for her board while so living in either of said families; that she rendered valuable service in said families, but there was no express agreement that said services should be paid for; that she lived as aforesaid in said families as one of the family, rendering services therein, upon the mutual understanding that nothing should be paid or chargeable, either for board upon the one hand, or services upon the other, but that both should be gratuitous, and nothing in fact ever was paid by said guardian for her board in said families, or either of them.” The appellant excepts to this finding of fact, and claims the right to recover two dollars per week for the board of the minor during his guardianship.
The rule is, that as between near relatives and members of the same family, the law will not imply a promise to pay for services rendered or board and lodging furnished, but, on the contrary, will assume that they were rendered and furnished gratuitously unless an express promise to pay is shown or evidence given showing that the parties expected pay. Lynn v. Smith, 35 Hun, 275, 276; Roblee v. Gallentine, 19 N. Y. Weekly Dig., 153; Ross v. Harding, 79 N. Y., 153; Wilcox v. Wilcox, 48 Barb., 327; Dye v. Kerr, 15 id., 444; Sullivan v. Sullivan, 6 Hun, 658; Williams v. Hutchinson, 3 N. Y., 312; Robinson v. Cushman, 2 Denio, 149.
Upon the trial*evidence was given by the appellant, his wife, and his son Charles, to the effect that after the marriage of the respondent with Charles that she wanted the child to come and live with her in the family; that Charles expressed a preference that the child should be left with the mother’s relatives and that they should be given the *183 pension for taking care of her; that the mother replied that she would rather the girl would be with her and let the pension take care of her; that thereupon the appellant consented, and the child was brought into the appellant’s family, where she continued to reside under the circumstances before related. On the other hand, evidence was given by several witnesses to the effect, that in conversations with the appellant he stated that she was a good girl to work; that he was drawing her pension for hei and that he was not charging her a cent for her board; that he was saving the pension for her so that she would have a nice start when she became of age. Further evidence was given tending to show that at an early age she commenced doing light work such as a child could do, and that as she grew older she assisted in doing the general work about the house and farm, such as is ordinarily done by farm girls of her age and station in life. It further appeared that the appellant never informed her or her mother that he was charging her or intended to charge her for her board until after her mother separated from her husband, Charles Ackerman. It does not appear that the appellant ever rendered or filed any statement of his account in the surrogate’s office, in which he charged her for her board until the filing of his final account. He did not in fact ever board her; she was brought into the family and cared for by her mother; her stepfather worked the farm upon shares, the appellant bearing half the table expenses; the only board furnished by him consisted in his share of the table expenses.
A careful reading of the entire evidence in the appeal book discloses ample grounds to sustain the finding of the acting surrogate, and no sufficient reasons appear for disturbing the same. _ .
_ Again, it is contended that the acting surrogate erred in finding, as matter of fact, that nothing was ever paid by the guardian for the board of the infant in either of the families. It was claimed, on the part of the appellant, that after the separation of the families, in 1874, he paid his son Charles two dollars a week for the board of the infant; that he paid him by deeding his ten acres of land of the value of three hundred dollars. It, however, appeared from the testimony of Elizabeth Ackerman, that the land was paid for by Charles by a certificate of deposit of $200, and by other cash payments, making up the $300, the purchase price of the land. Her evidence is in conflict with both Charles and Henry Ackerman upon this branch of the case, but upon their cross-examination, when questioned in reference to the certificate of deposit, Henry testified that he remembered of Charles having a $200 certificate, but does not remember what became of it; could not remember that *184 he ever saw it; he could not say that the certificate was endorsed by him, and that he had' the money on it, and could, not tell anything about what was done with the money. Charles testified that he did not remember of handing the-certificate to anyone; that he could not say what he did. with it; thinks he drew the money on it, but cannot say positively; his father might have drawn it; that if the certificate had his father’s name on it he should think that his father drew it; that he cannot remember about it more than he has stated. Their evidence upon the question is quite' unsatisfactory and cannot weigh heavily against the clear, distinct recollection testified to by Elizabeth Ackerman.
The acting surrogate appears to have allowed the appellant for all items of expenditure that were clearly and satisfactorily proven. No error appears in the adjusting of the accounts, and we are of the opinion that the decree-should be affirmed, with costs to be paid by the appellant.
So ordered.
Smith, P. J., and Bradley, J., concurred.