*In re* STRICKLAND'S ESTATE.

(*Surrogate's Court, Cattaraugus County.*   April 10, 1889.)

1. EXECUTORS AND ADMINISTRATORS—ALLOWANCE OF CLAIMS.
   Evidence that a father gave a mortgage on his farm, the proceeds of which were paid to his son to invest in land; that the son paid the interest on the mortgage for several years, when, the son wishing to get money at a lower rate, the father again mortgaged his farm; and that the proceeds were used by the son to pay off the former mortgage,—sufficiently shows that the loans were made for the son's benefit; and, where he paid interest on the second mortgage until about the time of his death, the statute of limitations does not bar the father's claim against his estate, though the son's books show a final settlement with the father, and charge him with payments thereafter made, but contain no reference to the mortgage.

2. SAME.
   A claim by a father against the estate of his deceased son for services in taking care of stock, and for fodder and grain for the stock, and board for the son and his employés, will be disallowed where it does not appear that any of the items were ever presented to the son, and where there are no allusions to them on the son's books; and it appears that the father made up his charges solely from recollection, having no memoranda of the transactions; that the father and son had at least two settlements, and that a note was given by the son to the father, and money was often paid by one to the other.

On settlement of claims against the estate of Dan A. Strickland, deceased.
*A. D. Scott,* for claimant.   *C. D. Murray* and *W. S. Thrasher* for contesting creditors.

SPRING, S.   The claimant is the father and administrator of the decedent, Dan A. Strickland.

The first claim arises out of certain mortgages given by the father, which it is alleged were really for the benefit of the son.   In 1873 the son, then having barely attained his majority, desired to purchase a farm in Otto, in this county, called the "Parkinson farm."   To accomplish this the father gave a mortgage on his own farm to one Sally French for $2,000, the proceeds of which were paid to the son.   In 1879 Dan A., who was paying the interest on this mortgage at the rate of 7 per cent., wished another one given at a lower rate of interest.   The father accordingly mortgaged his farm to the Mutual Life Insurance Company for $2,500, and out of this the son used $2,150 in paying up the preceding mortgage, and for other purposes, while the father had the remaining $350.   The interest on this mortgage was paid by decedent until about the time of his death, in 1882, and the mortgage then remained a lien on the farm of the father, except that Dan A. paid $100 of the principal sum of this incumbrance.   The evidence establishing this is uncontradicted, and clearly shows that these loans were for the benefit of the intestate.   The contestant's objection that this claim is invalid by reason of the running of the statute of limitations is hardly tenable.   The decedent recognized and kept alive the original debt by paying the interest on it from time to time.   It was not necessary that these payments be made directly to Strickland, as long as they were in recognition of the debt itself; but, even if the first loan had become tainted with this defense, it was cured, and the debt revived, by giving the second mortgage, and paying the avails to the son.   The only evidence militating against this demand is that the books of the decedent show a final settlement between father and son in 1879, and after that time the intestate charges the payment made by him to his father; but the difficulty with this lies in the fact that all through Dan's books there is no allusion to this mortgage, or his liability under it, although the testimony irresistibly establishes it; so that the inference is very strong that this charge, making a distinctive, unusual one by itself, was not embraced within this settlement, and may not have been deemed necessary as long as the mortgage existed as a lien against the father.   The payments of interest made by the son, and charged to the father, would tend to prevent any mistakes arising as to the person actually

making them. On the death of the son, therefore, there was due claimant the sum of $2,050, less the sum of $1,600, which he credits to him, leaving due to the father $450, and the interest thereon since December, 1881.

The next claim of the father is for services rendered by him in taking care of stock for the son, and furnishing him with fodder and grain for the same, and in boarding him and his men. The intestate was a stockdealer, buying cattle, hogs, and horses, bringing them to his father's farm, and disposing of them from there, or collecting them there preparatory to driving them to the cities for market. He carried on this business extensively from his earliest manhood until his death, and the father now presents a claim aggregating nearly $2,000 for the assistance he then rendered his boy. This claim does not impress me favorably. There is no proof that any of the items now embraced in this claim were ever presented to the intestate. There is no allusion to them on the books of the son. The father himself had no account or memoranda showing any of these transactions, but made up his charges solely from recollection. At least two settlements were had between the father and son, and a note was given as evidence of indebtedness from the son, and money was often paid by one to the other in payment of claims and accounts, and yet during these 10 years there is nothing indicating that the father was making up charges which he expected the son to pay. Claims of this character, presented after the death of one of the parties, are always viewed with suspicion. *Kearney* v. *McKeon,* 85 N. Y. 139. No principle of law is better settled than that the foundation for a recovery in such cases must be an express agreement or a mutual expectation that payment is to be made for the services rendered, and many of the circumstances so often alluded to by the courts in rejecting claims similar to Mr. Strickland's exist quite pointedly in this case. *Williams* v. *Hutchinson,* 3 N. Y. 312; *Robinson* v. *Cushman,* 2 Denio, 149; *Shirley* v. *Vail,* 38 How. Pr. 406; *Roblee* v. *Gallentine,* 19 Wkly. Dig. 153. The claim must be disallowed.

A decree will be entered establishing the first claim at the sum of $450, and interest thereon since December 6, 1881.