### PENFIELD v. PENFIELD.

(Supreme Court, Appellate Division, First Department. February 7, 1913.)

1. WORK AND LABOR (§ 7*)—SERVICES BETWEEN PERSONS IN FAMILY RELATION.

   Where a child, whose mother died shortly after her birth, was brought up by an aunt, who in about five years became her stepmother, and she continued to reside with her father and stepmother during her infancy and after she attained full age, and continued to reside with her stepmother after her father's death, and returned to live with her stepmother pursuant to her invitation, the law would not imply a promise to pay for board.

   [Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 11½–22; Dec. Dig. § 7.*]

2. WORK AND LABOR (§ 28*)—SERVICES BETWEEN PERSONS IN FAMILY RELATION.

   Evidence *held* not to justify a finding of a contract binding a child to pay board while living with her aunt, who became her stepmother.

   [Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 17, 55; Dec. Dig. § 28.*]

   Dowling, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by William W. Penfield, as executor of Louisa Ann Penfield, deceased, against Susan A. Penfield. From a judgment for plaintiff, entered pursuant to a decision of a referee, to whom the issues had been referred to hear, try, and determine, defendant appeals. Reversed, and new trial ordered.

See, also, 145 App. Div. 916, 129 N. Y. Supp. 1139.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and DOWLING, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thomas A. McKennell, of New York City (George C. Appell, of Mt. Vernon, and Alfred H. Appell, of New York City, on the brief), for appellant.

Gerard Roberts, of New York City, for respondent.

LAUGHLIN, J.   During the period from September 1, 1901, to November 1, 1905, the appellant resided with her stepmother at the homestead in Westchester county, which the appellant's father had by will left to his widow, the plaintiff's testatrix, for life "as a house for my family"; and this action is brought to recover for the board and lodging of the appellant during that time.   The plaintiff alleges that the board and lodging were furnished at the request of the appellant, and were reasonably worth the sum of $25 per week.   These allegations were put in issue by the answer, and the appellant alleged that the board and lodging were furnished to her gratuitously, and she also interposed the statute of limitations as a bar to a recovery.   The action was not commenced until the 5th day of August, 1910.   The referee rules that the action, in so far as a recovery is sought for the period prior to August 5, 1904, is barred by the statute of limitations; but he allowed a recovery for the period between the 5th day of August, 1904, and the date of the death of appellant's stepmother, November 1, 1905, at a rate of $25 per week, that being the value of the board and lodging as given by two boarding house proprietors, called by plaintiff as experts, in answer to hypothetical questions.

[1]  The appellant and a brother are the surviving issue of their father's first marriage.   The second wife of the appellant's father was his first wife's sister, and therefore the plaintiff's testatrix, in behalf of whose estate a recovery for appellant's board and lodging is sought, was both appellant's stepmother and aunt.   Moreover, appellant's mother died a week after appellant was born, and her aunt, who within about five years became her stepmother, cared for and brought her up as if she were her own child.   The appellant continued to reside with her father and stepmother until about 1892, at which time she was about 40 years of age.   Prior to appellant's birth, her mother's mind had been affected, and evidently the appellant inherited a weak mind, for she was and is of a melancholy disposition and eccentric, and her presence annoyed, and at time tested the patience of, those about the household, although, apparently out of consideration for her mental condition, no feeling of ill will was entertained against her.   During the year last mentioned the appellant's father took her away from home on a visit, and, instead of bringing her back, left her as a boarder where they had visited, and from that time on until he died, in August, 1896, she did not again become a permanent member of his household, although from time to time she made short visits home, and she was visiting there when her father died.   Appellant's stepmother left two sons, the issue of her marriage to appellant's father.   On the death of appellant's father, she and her brother and her stepbrother William and her stepmother constituted the remaining members of the household.   William was unable to, or would not, bear with appellant's eccentricities, and he insisted that she should not re-

main a member of the household; and he evidently induced his mother to visit her son, who was not living at home. The appellant, finding that she was left alone, went away and boarded again, and, except for occasional visits home, she boarded at numerous places, including the home of her stepbrother James, until about the 1st of September, 1901. About this time William ceased to be a member of the household, and thereupon his mother, with his consent, requested James to invite the appellant to return to the homestead and live with her, which the appellant did, and remained there until the death of her stepmother. In such circumstances, the law will not imply a promise to pay for board or lodging. Collyer v. Collyer, 113 N. Y. 442, 21 N. E. 114; Sullivan v. Sullivan, 6 Hun, 658; Williams v. Hutchinson, 3 N. Y. 312–319, 53 Am. Dec. 301.

[2] There is no evidence that any express contract was made between the appellant and her stepmother, either with respect to *the amount* to be paid or charged for board and lodging, or either, or that appellant was to pay for either board or lodging. There is no evidence that appellant's stepmother ever presented a bill for board or lodging, or ever demanded from her, or asked for, the payment of any amount for either board or lodging. The judgment against the appellant is predicated upon an implied agreement to pay the *reasonable value* of the accommodations furnished to the appellant by her stepmother. There is evidence in the record tending to show that the appellant *understood* that she was to pay for her board and lodging, and that she intended so to do, and that her stepmother intended to make a charge therefor, and that the appellant was desirous at different times of having the amount she was to pay agreed upon; but there is no evidence that there ever was any agreement with respect thereto between her and her stepmother. Considerable of the evidence tending to show that the plaintiff's testatrix intended to charge the appellant for board and lodging consists of declarations made by the testatrix, in the absence of the appellant, which appear to have been drawn out on cross-examination of a witness for plaintiff, or received without objection. With the exception of those declarations, made by the stepmother in her own interest, there is no evidence in the record from which it could be fairly inferred that there was an agreement between testatrix and appellant that the latter should pay for her board and lodging, excepting the evidence given by a nurse in the employ of the testatrix, who testified, in effect, that some six months prior to the testatrix's death she witnessed a conversation between the testatrix and the appellant, which arose from the fact that the appellant had ordered delicacies from the grocer's, and the witness says that the testatrix complained, and said that the appellant would have to pay "board," or "more board," or "higher board," if she wanted "such things" ordered. The witness, says, however, that the appellant asserted her right to live at home without paying board, and stated that, if she were to be charged board, she would leave. One version of that interview as given by the witness is entirely consistent with the absence of any agreement to pay board, and therefore a recovery on her testimony should not be permitted.

There is in the record competent evidence of declarations against interest made by the testatrix to her son and his wife, to the effect that she was not charging and did not intend to charge appellant for either board or lodging, notwithstanding the fact that her son William was insisting that she do so. There is evidence in the record upon which it is argued that it is not improbable that appellant was to be charged with board and lodging, and that the testatrix intended, as William testified she stated to him, to charge the appellant for board, but not for lodging. The appellant during these years had an income, from property left in trust by her father, of between $1,500 and $2,000 a year. The income of her stepmother could not have been much more than that amount, for she had the income from a trust fund of $20,000 and the rent of a house in Lexington Avenue, borough of Manhattan, New York, which rented for $1,200 a year. Prior to the time when the testatrix invited the appellant to return home, the appellant had been declared a paranoiac by a physician who had examined her, and it was thought that it would be necessary to send her to a sanatorium, where her income would have been insufficient to maintain her. She had, prior to her return home, been paying $15 per week for board and lodging. There is evidence tending to show that the will of appellant's father, as construed by at least one member of the family, precluded a charge being made against appellant for lodging, and that the testatrix understood that her deceased husband intended that the appellant should be permitted to live at home. Her father by his will gave her the furniture in her room in the family mansion, which, together with the clause in his will by which he left the use of the homestead to his widow "as a house" for his "family," is some indication that the appellant had a right to the use of the room known and recognized by her father as her room.

The fact that appellant's brother and stepbrothers, prior to the time she returned home, had executed an agreement construing the will as entitling the stepmother to the use of the entire house, and that, while appellant was afforded a home there, she was induced to sign the same agreement, does not materially weaken the contentions made in her behalf on this appeal. If there was any evidence of an express contract between the testatrix and the appellant for the payment of her *board,* it would not be improbable, in the circumstances, that such an agreement was made; but in the absence of such evidence, and in the absence of any claim made by the testatrix during this period of over four years, for part of which period one of the sons of the testatrix was managing the property of the appellant under a power of attorney, and with income owing to appellant which might have been appropriated to the payment of her board, it is improbable that there was any agreement for the payment even of board, or that the testatrix intended to make any charge against the appellant therefor. The reasonable inference from the evidence is that the testatrix had great sympathy for the appellant, and an affection for her akin to that of a mother, and that, in so far as she administered to the wants, care, and accommodation of the appellant, she did so gratuitously and without any expectation of reward.

We are of opinion, therefore, that the findings in favor of the plaintiff are against the weight of the evidence. It follows that the judgment should be reversed, with costs to appellant to abide the event, and a new trial ordered before another referee.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ., concur.

DOWLING, J. I dissent, and favor the reversal of the judgment and the granting of a new trial only if plaintiffs should refuse to agree to a reduction of the amount awarded to the sum of $967.50, with interest, amounting in all to $1,300.16, being at the rate of $15 per week for the board and lodging furnished defendant; that, in my opinion, being a fair and reasonable compensation therefor.