## SHARP *vs.* CROPSEY.

Although a step-father is not bound, in law, to support his step-children, yet if he acts the part of a father towards them, and does support them, the law will not imply on their part, a promise to pay him for such support.

His assumed relation of father entitles him, on the one hand, to their services without compensation; and entitles them, on the other, to their support and education, without remuneration.

In such cases, the step-father and step-children will be deemed to have dealt with each other in the character of parent and child, and not as strangers; without obligation, on the part of the father to pay for his children's services, or on the part of the children to remunerate their father for their support.

The case of *Gay* v. *Ballou*, (4 *Wend.* 403,) so far as it holds that a step-son is liable either upon an implied promise, or upon an express promise during his minority, to pay for necessaries furnished by his step-father, must be considered as *overruled*.

WRIT of error to the New-York common pleas.  This was an action brought by J. F. Cropsey against William H. Sharp, for board, lodging, &c.   The defendant, by his guardian, pleaded infancy; the plaintiff replied, that the board, &c., were necessaries suitable to the estate and condition of the defendant; the defendant rejoined, that they were not necessaries, &c.  The case was referred to three referees, two of whom found in favor of the plaintiff for $330, the other referee dissenting.   The court

of common pleas, on motion for that purpose, refused to set aside the report, and a writ of error upon their judgment was now brought to this court.

It appeared from the case, that Cropsey, the plaintiff, married in 1829, the mother of the defendant, then the widow of John Sharp, deceased. The defendant, at the time was an infant of about seven years of age, having been born 19th Sept. 1822. He lived in the family of the plaintiff, and was supported and educated by him, from the time of his mother's second marriage, until about April, 1841. The plaintiff's claim was for board from September, 24, 1836, to February 1, 1851; besides money paid for necessaries for the defendant, in 1841. In 1839, at a meeting in relation to some property which belonged to the children of John Sharp, inherited from their paternal grandmother, the plaintiff produced to the defendant a bill for his board from September 24, 1836, to August 1, 1831, and from September 3, 1837, to November 3, 1839, amounting to $354; which bill the defendant admitted to be correct, and requested Arnold Nelson, the witness who testified to this, and who was the defendant's guardian, to pay it. The defendant objected to the introduction of this testimony, but the referees admitted it. Cropsey, the plaintiff, receipted the bill and handed it to the witness, as so much cash on a business transaction between them ; and the witness charged the defendant with the amount in his account as his guardian. The receipted bill was afterwards handed back to Cropsey, the arrangement between him and the witness having been rescinded in 1842. It was also proved that the defendant admitted that he had boarded with the plaintiff for the time mentioned in the bill exhibited to him, as above stated, in 1839, and that the prices charged for the board were correct. Evidence was also introduced to show, that in 1830 the plaintiff, Cropsey, and his wife, applied to the court of chancery, stating that Henrietta Cropsey, the wife of the plaintiff and mother of the children, had become largely indebted for their support and maintenance, and praying that an account might be taken of the moneys she had expended, and of the rents and profits of property belonging to

the children which she had received; and that the account might be stated between her and her children; that it was referred to a master of the court and he stated an account, by which the defendant appeared to be indebted to his mother and his step-father, the plaintiff, in the sum of $385,48. The report was filed October, 20, 1830, but no further proceedings appeared to have been taken upon it.

A deed was also offered in evidence, by which, in 1841, the children of John Sharp, deceased, conveyed to their mother certain property they had inherited from their grandmother, as a compromise of all claims due her from the children who united in the deed, as well for money advanced to them, as for her expenditures or disbursements for them. The defendant did not unite in this deed, being an infant; but on September 25th, 1843, he executed a deed, to which his mother and the plaintiff were parties, for his interest in the same property; which the plaintiff and his wife agreed to take in full of all claims of Henrietta Cropsey, the mother, for the expenditures and disbursements of said Henrietta for the defendant.

No express promise, on the part of the defendant, to pay the plaintiff for his board and lodging, was proved.

The present action was brought in October, 1842, whilst the defendant was still an infant.

*W. C. Noyes*, for the plaintiff in error.

*Jas. T. Brady*, for the defendant in error.

*By the Court*, KING, J. This is an action brought by a step-father against his step-son, for board and lodging, and other necessaries furnished the latter during his minority. The plaintiff married the mother of the defendant, when the latter was seven years old, from which time until near his majority he lived with the plaintiff as one of his family. The defendant's mother and the plaintiff were allowed by the court of chancery maintenance for the infant out of his property, during a portion of his minority: the expenditures now sought to be recovered do

not seem to have been included in the amount so allowed. The defendant, since he attained his majority, has conveyed to his mother property in satisfaction of any claim she might make against him. This action was brought by the plaintiff against the defendant whilst the latter was still an infant.

The question involved in this case seems to be, whether a step-father who receives into his family, supports and educates the children of his wife, by her former husband, can sustain an action at law against them for the necessaries so furnished, without an express promise to pay, made after they have attained their majority; or, in other words, the step-father being under no legal obligation to support his wife's children by her former husband, will the law imply a promise, on their part, to pay him, if he actually does maintain them and furnish them with necessaries.

It appears to me that the principles laid down in 5 *Barb. S. C. Rep.* 122, *Williams* v. *Hutchinson*, and in 3 *Comst.* 312, the same case on appeal, are decisive of the present case.

It is decided in that case, that although a step-father has no right to the services of his wife's children by her former marriage, yet, if he takes them into his family and supports and educates them, he stands in *loco parentis;* and it is against the policy of the law to imply a promise on his part to pay for the services they may render him whilst they remain in his family, and he continues to act the part of a father towards them. The converse of the proposition would seem equally true, and within the same policy; that although the step-father is not bound in law to support his step-children, yet if he acts the part of a father towards them, and does support them, the law will not imply on their part a promise to pay him for such support. His assumed relation of father entitles him, on the one hand, to their services without compensation; and entitles them, on the other, to their support and education without remuneration.

The case of *Gay* v. *Ballou,* (4 *Wend.* 403,) cited on behalf of the defendant in error, must be considered as overruled, so far as it holds that a step-son is liable, either upon an implied prom-

ise or upon an express promise during minority, to pay for necessaries furnished by his step-father.

The rule would seem to be this, that the step-father is not bound to support his step-children, nor the latter to render him any services; but if he maintains them, or they labor for him, they will be deemed to have dealt with each other in the character of parent and child, and not as strangers, without obligation on the part of the father to pay for his children's services, or on the part of the children to remunerate their father for their support.

The judgment of the common pleas should, therefore, be reversed, without costs to either party in this court.

Judgment reversed.

[NEW-YORK GENERAL TERM. June 14, 1851. *Edmonds, Edwards* and *King*, Justices.]