## HAGGERTY *vs.* McCANNA.

A died seized of real estate, leaving a widow and an infant daughter. B married the widow, and assuming from her having administered on her former husband's estate that she was the owner of the real estate, erected houses thereon, and improved it in various other ways, and also paid off a mortgage of $300 upon the property. He also, voluntarily assumed the care and support of his step-daughter. Dower had never been assigned to the widow. Upon the death of her mother, the step-daughter brought an action of ejectment against B to obtain possession of the premises. B then filed his bill to restrain the prosecution of that suit, and praying that the value of the improvements and of the land, irrespective of the improvements, might be ascertained, and the defendant required to pay him for the improvements and the amount of the mortgage paid by him, or release the land on receiving the value thereof, over and above the improvements, after deducting therefrom, the mortgage debt, and a proper allowance for her support while living in his family. *Held,*

1. That the 'mistake being the result of inexcusable negligence, equity will not relieve from its consequences.

2. The defendant being an infant during all the time in which the improvements were being made, no relief can be had on the ground of acquiescence.

3. Though the mother be considered as having been in possession of the premises as guardian of the defendant, and as having made the improvements as such guardian, the complainant is not, therefore, entitled to have from the defendant, the value of the improvements. A guardian will not be allowed the cost or even the value of the buildings erected on the estate of the ward, without authority.

4. Having voluntarily assumed the support of his step-daughter, the complainant is not entitled to compensation for that support. In the absence of an express promise, made by the child after attaining majority, to repay the step-father, no compensation can be recovered by him, at law or in equity, for such support.

5. The money paid in satisfaction of the mortgage, with lawful interest from the time of payment, declared an equitable lien on the land, and charged thereon.

6. Taxes paid by complainant and the improvements made by him in this case, balance the rents and profits that might be due the defendant.

7. Had defendant been applicant for exercise of equitable power, instead of complainant, assistance might have been extended to her on terms, or refused altogether.

On final hearing on pleadings and proofs.

*Mr. James Wilson*, for complainant.

*Mr. Mercer Beasley, Jr.*, for defendant.

THE CHANCELLOR.

In 1864, the complainant married Jane McCanna, then the widow of John McCanna, deceased. She had one child, the defendant, the issue of her marriage with McCanna. The defendant was about eleven years old when her mother was married to the complainant. Her father died seized of two vacant lots in Trenton, then of comparatively small value. After his death, his widow built, at the cost of about $500, a small house on one of the lots and resided in it. After her marriage to the complainant, the latter built another house on the front of the same lot, and a house on the other lot. He improved the lots in various other ways, by grading, flagging the sidewalks, &c. He and his wife dwelt in one of these houses and rented out the other. He paid the taxes and assessments on the property. From the time of his marriage to this time, he has been in possession of it. His wife had dower in it, but it was never assigned. When the buildings and other improvements above referred to, were put on the property, both the complainant and his wife supposed that the land belonged to the latter, and they first learned their mistake when she, being as she supposed *in extremis*, in September, 1871, called in a lawyer to make her will. She died in September, 1872, leaving three children, the defendant and two other daughters, the issue of her marriage with the com-

plainant, both of whom are still living. When McCanna bought the property, it was subject to a mortgage for $300, the amount of which was allowed him as so much of the purchase money. The mortgage was subsequently assigned to his brother, who, in 1867, required payment, and the complainant then, with his own money, paid it, sending to the holder of it in Ireland, a draft for the amount then due on it, $487, and received it in return with the bond it was given to secure. This mortgage the complainant, in the full belief that the property was his wife's, subsequently, when he was about to mortgage the property to secure a loan, caused to be cancelled of record. The defendant lived in the complainant's family from the time of his marriage to her mother up to March, 1871, when she was sent to a school in Newark. The complainant, however, appears not to have supported her at that school. Very soon after the death of the complainant's wife, the defendant instituted an action of ejectment against the complainant, in the Supreme Court, to obtain possession of the premises. The complainant then filed his bill to restrain her from prosecuting that suit, and praying that the value of the improvements and the value of the land irrespective of them, might be ascertained, and the defendant might be required to pay him for his improvements and the amount of the mortgage debt paid by him, or release the land to him on receiving the value thereof, over and above the improvements, after deducting therefrom the mortgage debt above referred to, and a proper allowance for her support while she lived in his family.

This case is one of great hardship. The improvements are proved to be of the present value of more than $2000. They were all made by the complainant except the small house before mentioned, built by his wife during her widowhood. Against the value of these improvements, and the payments made on account of the property by the complainant, there is no offset except the value of the use and occupation of the lots, which, undoubtedly, is comparatively very insignificant. The result of the suit at law, must be to de-

prive the complainant of his entire property. He invokes the aid of this court to prevent so flagrant a wrong. He bases his claim to relief on the ground of mistake. But an error which is the result of inexcusable negligence, is not a mistake from the consequences of which equity will grant relief. The complainant's mistake in this case, was in assuming, as he says he did, from the fact that his wife had administered on McCanna's estate, that she was the owner of the lots of land in question. He appears to have made no inquiry whatever on the subject. On the argument it was urged that on the ruling of this court in *McKelway* v. *Armour*, 2 *Stockt.* 115, the relief sought might be granted. But the decision in that case was expressly put on the ground of the complainant's mistake as to the location of a vacant lot, plotted out on a map only, a mistake which the court said was one which might occur to the most careful and diligent man, and the fact that the defendant stood by and participated in the mistake, which latter consideration was regarded as a most important feature in the case. In the present case the defendant, during all the time during which the improvements were made, was an infant, and incapable, therefore, of either the participation or the acquiescence which were so essential elements in that case. Besides, the mistake here was one from which the most ordinary care would have guarded the complainant. No relief can be afforded him on the ground of mistake. Nor can he avail himself of the position taken by his counsel on the hearing, that his wife may be considered as having been in possession of the premises as guardian of the defendant, and as having made the improvements as such guardian, and that therefore the complainant is, in equity, entitled to have from the defendant the value of those improvements. A guardian will not be allowed the cost or even the value of the buildings erected on the estate of the ward without authority. *Putnam* v. *Ritchie*, 6 *Paige* 390 ; *Hassard* v. *Rowe*, 11 *Barb.* 24 ; *Green* v. *Winter*, 1 *Johns. Ch.* 26 ; *Bellinger* v. *Shafer*, 2 *Sandf. Ch.* 293 ; *Payne* v. *Stone*, 7 *Sm. & M.* 367. The complainant's

counsel insisted upon the hearing that, under the circumstances, the court would, to relieve the complainant, in part at least, grant him an allowance for past maintenance of the defendant. That the support which the complainant gave her, was given without expectation of compensation, is manifest from the evidence. He appears to have voluntarily assumed the care and support of his step-daughter. He therefore stood towards her *in loco parentis*. In the absence of an express promise, made by the child after attaining majority, to repay the step-father, no compensation can be recovered by him at law or in equity, for such support. *Chitty on Con.*, 11 *Am. ed.* 215; *Cooper* v. *Martin*, 4 *East* 76; *Shark* v. *Cropsey*, 11 *Barb.* 224; *Williams* v. *Hutchinson*, 3 *Comst.* 312; *Lantz* v. *Frey*, 19 *Penn.* 366; *Worthington* v. *McCraer*, 23 *Beav.* 81; *Grove* v. *Price*, 26 *Beav.* 103; *Schouler on Dom. Rel.* 378.

I do not feel at liberty, even for so conscientious a purpose as to mitigate the unquestionable hardship of the complainant's case, to create a liability where no legal or equitable foundation for it exists. The case in 26 *Beavan* is in point. There the step-father's estate was chargeable with certain trust money received by him, the property of the step-children. His executor sought to offset it by a claim in favor of the step-father for the maintenance of the children. The master of the rolls, Sir John Romilly, refused to allow it.

I am constrained to refuse the relief the complainant asks, on this ground also. The money paid in satisfaction of the mortgage, however, with lawful interest from the time when it was paid by the complainant, should be declared to be an equitable lien on the land, and should be charged thereon accordingly. The taxes, &c., paid by the complainant in respect of the property, and the improvements made by him thereon, are enough to answer any just demand of the defendant for rents and profits. In any account of these rents and profits, between her and the complainant, she would be in equity, entitled to only two-thirds thereof, during the life-time of her mother, whose dower in the premises was never assigned. The complainant is entitled, also, to his costs of

this suit. I shall therefore charge upon the land, the amount paid in satisfaction of the mortgage, with interest from the time when it was paid, and on payment thereof to the complainant, with his costs of this suit, the injunction will be dissolved. This case would present a different aspect as to the relief which the court could afford in the premises, were the defendant, instead of the complainant, an applicant for the exercise of equitable power. In such case, the court might extend its assistance to her on terms, or refuse its aid altogether, according as equity might seem to demand.