NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—December, 1882.

HALLOCK v. TELLER.

*In the matter of the estate of* DANIEL JACKSON, *deceased.*

In the absence of an agreement between the parties, the law does not imply a contract to compensate one for board, lodging or nursing, furnished at his own house to his parent, child or other near relative.

Decedent, at the age of eighty years, began to reside with his married daughter, T., and continued so to do for three years, until his death. T., having been appointed administratrix of his estate, presented a claim against the latter for over $600, for board, and for nursing and attending decedent in his last illness. It appeared that, pursuant to an arrangement, decedent had paid $4 per week for board during such residence, that he had remarked it ought to be $2 more, and he

would pay T. $2 extra ; that he had occasionally, while he so resided with his daughter, given her money—once as much as $50; but the evidence did not show that such money was intended as payment on account of his shelter or support.—

*Held,* that the promise of the extra amount was gratuitous, and formed no part of the contract for board ; and that the claim of the administratrix should be disallowed.

HEARING of exceptions to referee's report on administratrix's accounting; filed in behalf of Daniel F. Hallock, and another, administrators of the estate of one of decedent's next of kin. The facts appear sufficiently in the opinion.

JOHN H. INNESS, *for administratrix.*

THOS. S. MOUNT, *for exceptants.*

THE SURROGATE.—This decedent died intestate in February, 1877. In May following, his daughter, Sarah A. Teller, was appointed administratrix of this estate. She filed an account in 1879, supplemented by another in 1880. In October, 1881, she filed still another, to which objections were interposed. The matter was thereupon sent to a referee, whose report is now before the court.

The referee allowed the administratrix, as principal and interest, the sum of $672.50 for board furnished the decedent, and for watching, nursing and attending him in his last illness. After the death of his wife, the decedent and his daughter Esther went to live in the family of the administratrix and her husband. This was in February, 1874, when decedent was eighty years of age. He made his home with the Tellers for the three following years, and until his death in 1877.

It has been established, by repeated decisions of the

courts of this State, that, in the absence of an agreement between the parties, the law does not imply a contract to compensate one for board, or lodging, or nursing, furnished at his own house to his father, mother, son, daughter or any other near relative. (Bowen v. Bowen, *2 Bradf.*, *336*; Dye v. Kerr, *15 Barb.*, *444*; Robinson v. Cushman, *2 Den.*, *149*; Sharp v. Cropsey, *11 Barb.*, *224*; Conger v. Van Aernum, *43 Barb.*, *602*; Wilcox v. Wilcox, *48 Barb.*, *327*; Matter of Teyn, *2 Redf.*, *306*; Keller v. Stuck, *4 Redf.*, *297*; Van Kuren v. Saxton, *3 Hun*, *547*; Williams v. Hutchinson, *3 N. Y.*, *312*; Kearney v. McKeon, *85 N. Y.*, *139*).

So far, therefore, as the present claim of the administratrix rests upon the bare facts that board and lodging were furnished and that services were rendered, it cannot be sustained. There is evidence, however, of an express contract. From the testimony of Miss Jackson it appears that, some weeks after the decedent had taken up his residence at Mrs. Teller's house, she heard a conversation between them—that her father asked her sister what about the board, and what Mr. Teller said about the board; that her sister replied that Mr. Teller thought $4 a week would be enough; that thereupon, her father said: "Is that all? well I suppose he only wants to clear himself; it ought to be more; it ought to be $2 more;" that her sister then asked: "Are you satisfied with that," and that the decedent answered that he would pay Mrs. Teller herself $2 extra.

The deceased thenceforth, until his death, paid $4 per week to Mr. Teller. It is not pretended that the extra

$2 was ever given or offered to Mrs. Teller, or that she ever demanded it, or ever made any charge for it, or ever afterward talked about it with her father.

The parties interested in the estate, and the Surrogate's court, first heard of her claim more than four years after a portion of it had become due, if it has ever become due, and nearly three years after the death of her father. It seems that, from time to time, while the decedent dwelt with her, he gave her money—once as large a sum as $50. The evidence does not persuade me, however, that he intended these moneys to be received in payment, in whole or in part, for the shelter and support which were afforded him in his daughter's house. They were gratuities; and the promise of the $2 was also gratuitous. It formed no part of the contract for board and lodging. It was such a promise as the law would suffer him to keep or to break, at his pleasure; and whether he kept it or broke it is immaterial in this accounting.

Except for this item, the referee's report is in all things confirmed.