ELIZA ANN CROPSEY, by her next friend, *vs.* PETER B. SWEENEY, public administrator, &c.

The abolition, in words, of the distinction between actions at law and suits in equity, by the code, was not intended to break up the well settled fundamental principles and limits of common law and equitable jurisdiction, and open to courts, as proper subjects of judicial discretion, a class of moral wrongs, or misfortunes, not previously the legitimate subjects of legal or equitable investigation or redress.

Nor was the abolition of the *forms of action* intended to create or justify novel and unprecedented *causes* of action.

In an action upon an implied assumpsit, although it is no longer necessary for the plaintiff to allege, in his complaint, any promise on the part of the defendant, yet he must *state facts* which, if true, would, prior to the code, have authorized him to allege, and the court to infer, a promise on the part of the defendant.

A woman who has lived with a man as his wife, supposing herself to be such, cannot, on discovering that the marriage between them was void, recover for her services, upon an implied promise to pay for them.

APPEAL from an order made at a special term, overruling a demurrer to the complaint. The action was brought by the plaintiff to recover for services rendered by her for James Ridgeway, deceased, in his lifetime, while she and Ridgeway were living together as husband and wife, and supposing themselves to be such, in pursuance of a marriage valid in point of form. The marriage afterwards turned out to be void, however, in consequence of Ridgeway having a previous wife, living at the time. The material statements of the complaint are detailed in the opinion of the court.(*a*) The defendant, who, as public administrator, administered upon the estate of Ridgeway, after the death of the latter, demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action.

*By the Court,* SUTHERLAND, J. Unless the code, by abolishing the distinction between actions at law and suits in equity, and the forms of such actions and suits, and of pleadings theretofore existing, intended to initiate, and has initiated new principles of law, by which a class of rights and of wrongs, not before the proper subjects of judicial investigation and remedy, can now be judicially investigated and remedied, the facts stated in the plaintiff's complaint in this action, do not constitute a cause of action, and the demurrer of the defendant to that complaint is well taken. I am not aware that any one has ever claimed for the code, or charged against the code, a mission, or purpose, so bold, novel, sweeping and dangerous. It cannot be supposed that the abolition, in words, of the distinction between actions at law and suits in equity, by the code, was intended to break up the well settled fundamental principles and limits of common law and equitable

(*a*) See *Cropsey* v. *Ogden,* (1 *Kern.* 228.)

jurisdiction, and open to courts, as proper subjects of judicial discretion, a class of moral wrongs, or misfortunes, not before the legitimate subjects of legal or equitable investigation or redress. Nor can it be supposed that the abolition of the forms of actions was intended to create or justify novel and unprecedented *causes of* action.

Although the form of the action of assumpsit, and of the pleadings therein, has been abolished, yet the obligation of contracts, and the distinction between an express and an implied assumpsit remain; and notwithstanding the code, in a large class of cases, now as before the code, it is only on the theory of an implied assumpsit, " inferred from the conduct, situation, or *mutual relations* of the parties," that justice can be enforced, and the performance of a legal duty compelled.

It is no longer necessary, and perhaps not even proper in such a case, for the plaintiff to *allege in his complaint* any promise on the part of the defendant, but he *must state facts*, which if true, according to well settled principles of law, would have authorized him to allege, and the court to infer, a promise on the part of the defendant, before the code. The form of assumpsit is no longer necessary, or perhaps even proper, in such a case; but facts sufficient to raise it, and to put it on paper, were it lawful to do so, are still necessary.

It follows, from what has been said, that the principal question raised by the demurrer in this case is, there being no express promise pretended or alleged in the complaint, whether the law implies a promise from the facts therein stated.

The action is for services rendered by the plaintiff for James Ridgeway in his lifetime, while the plaintiff was standing in the supposed relation of wife.

It is alleged in the complaint, that the marriage ceremony was solemnized in due form of law, between the plaintiff and James Ridgeway, in 1821, she believing that they were lawfully married, and living and cohabiting with him as his wife. That on or about the 15th September, 1821, proceedings were instituted in the court of chancery, of this state, against

James Ridgeway,. for divorce, by Catharine Ridgeway, to whom, under the name of Catharine Dob, he had been married, in the year 1812, and from whom he had separated in 1815. That on or about the 13th day of June, 1822, a decree was made, 'dissolving the marriage between the said Catharine and James. That about the summer of 1825, the marriage ceremony was again solemnized, in due form of law, between the said plaintiff and the said James Ridgeway. That before and at the time of the ceremony of marriage in 1825, the plaintiff was informed, and believed, that the said James Ridgeway was competent to contract marriage with the plaintiff, and that no impediment existed, and that the plaintiff believed that the marriage was valid until after the death of James Ridgeway. That from the time of the first marriage ceremony until James Ridgeway's death, in 1847, the plaintiff and the said James lived and cohabited together as husband and wife, and were known and reputed as such. That at the time of the first marriage ceremony, James Ridgeway was a carpenter, and possessed of property not exceeding $1000 in value. That the plaintiff, in addition to her ordinary household duties, and the usual care and management of the domestic affairs of James Ridgeway, labored to promote the success of his undertakings, and to procure the means of defraying the household expenses, and in the conduct and management of the domestic affairs practiced the utmost economy. That the said James was successful in his business, and accumulated a fortune, which, at the time of his death, amounted to $150,000. That during the entire period the plaintiff so lived and cohabited with James Ridgeway, she had the entire management of his domestic affairs, and labored, by industry, economy, care and attention to her duties, to promote his interests and success; and that it was owing to her efforts that he was enabled to accumulate so much property. That during the same period she bore unto him twelve children. eight of whom are living. That prior to the marriage of James Ridgeway with Catha-

rine Dob, he had once been married, and had issue by both marriages. That one child, Eliza Ann, wife of Jeremiah Rowland, and one grandchild, George W. Ridgeway, surviving issue of his deceased son Joseph, the issue of his first marriage; and one grandchild, the sole surviving issue of a daughter by his second marriage, claim to be the only lawful heirs of James Ridgeway, and entitled to his estate.

The plaintiff claims that the services rendered by her to James Ridgeway, in and about the management of his household affairs, and otherwise, as in the complaint set forth, were rendered at his request, and were reasonably worth forty thousand dollars : and demands judgment for that sum, with interest from 21st Nov. 1847. It is not alleged in the complaint that James Ridgeway, in his lifetime, ever knew or supposed, after the last marriage ceremony, that the plaintiff was not his lawful wife; nor is it alleged that when his first supposed marriage with the plaintiff took place, he knew that his wife Catharine was living, and he unable to contract a legal marriage with the plaintiff.

No doubt, from the time of the first marriage ceremony to the institution of the suit for divorce, and from the time of the second marriage ceremony until his death, James Ridgway and the plaintiff both supposed they were lawfully married, and that he lived and died supposing the plaintiff was his lawful wife. Now, after his death, upon the assumption that his supposed marriage was not legal, will the law permit us, or authorize us, to turn this supposed relation of husband and wife into the relation of master and servant, and thus infer or imply a promise on the part of James Ridgeway, in his life, to *pay*, and an expectation on the part of the plaintiff to *receive pay*, for the services rendered by the plaintiff while so standing in the supposed relation of husband and wife ? The very ground upon which the plaintiff's case appeals so strongly to the sympathies of the court, forbids any such fiction, inference, or implication. Her own (no doubt truthful) story of her long, devoted, faithful love, and services, as a *wife* and

*mother*, will not permit us to say that she is legally entitled to receive pay for those services *as a servant*.

True, the law will not presume that work or labor performed *as a servant or laborer*, was voluntary, and performed without any view to compensation; but the law cannot presume that the domestic and household work and services of a wife for a husband are performed with the view to pay as a servant or laborer.

The law would do injustice to the plaintiff herself, by implying a promise to pay for these services; and respect for the plaintiff herself, as well as for the law, compels us to infer and hold, that these services were performed not as a servant, with a view to pay, but from higher and holier motives; and that therefore her complaint does not constitute any cause of action.

The order of the special term, overruling the demurrer, must be reversed, and the defendant must have judgment on the demurrer.

