Thornton *v.* Grange.

The order must be affirmed, with leave to the defendant to answer in twenty days, on payment of costs.

Order affirmed.(*a*)

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, January 7, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.] ·

(*a*) An appeal from the above decision was dismissed by the Court of Appeals. See 55 *N. Y.* 643.

---

CLARISSA THORNTON *vs.* DAVIS GRANGE, administrator, &c.

When a relative, more distant than a child, goes to live with a person, at his request, the presumption that such relative lives with the person as a member of the family, and not as a servant, is less strong than in the case of a child; and slight circumstances will be sufficient to overcome it.

The plaintiff, at the request of C., her uncle, went to live with him, in his family, and remained with him for several years, rendering services as nurse and housekeeper. No agreement as to compensation was made. Testimony was given, showing that C. had admitted an intention to pay her something. *Held* that the decision of a referee, allowing the plaintiff compensation for her services, would not be disturbed. Neither would it be disturbed in respect to the rate of compensation; there being conflicting testimony as to the value of her services, and as to her own admissions, in respect to what she was to receive therefor.

THE plaintiff was a niece of Chillingsworth Colwell, the defendant's intestate, and went to live in his family, in October, 1856. She lived with him, taking care of his wife, who was, for several years, a paralytic, of his daughter during her latter illness, and of her child after its mother's death. She was, for part of the time, the only friend in the family, and had the supervision of the household affairs.

She ceased to live with the intestate in March, 1865. In November, 1869, her uncle was found to be a person of unsound mind, and it was found that he had been of unsound mind from November, 1867.

He died in April, 1870. After his death, and the ap-

pointment of the defendant as his administrator, the plaintiff presented a claim against the estate, for services rendered to the intestate, for eight years, four months and three weeks, less absences estimated at ten weeks, making in all 426 weeks, at $4 per week, amounting to $1,704. She allowed, on the account, a credit for payments at different times, the sum of $400, leaving due to her $1,304.

The administrator disputed the correctness of the account, and it was thereupon referred to a referee, with the approval of the surrogate. The agreement to refer commences by a recital of the presentation of the account and that the administrator doubted its justice, and then proceeds as follows: "Now, therefore, in pursuance of the statute in such case made and provided, it is hereby stipulated between the said Thornton and Davis Grange, as administrator of said estate, that the said claim and matter in controversy be referred to Thomas Baker, Esq., of the city of Watertown aforesaid. Dated Oct. 2, 1871."

The account and stipulation constitute all there was, in the nature of pleadings, between the parties.

On this trial, the plaintiff testified that she was keeping house for a lady, and was sent for by the intestate. This is all the evidence on the part of the plaintiff, as to the arrangement under which she went to live with him. No agreement as to the amount of wages was proved. Four witnesses on the part of the plaintiff testified that the intestate told them he had not settled with the plaintiff, or paid her for her services, but would do so; that he intended to do well by her. On the part of the defence, three witnesses were called, who testified that the plaintiff told each of them that she was receiving only $1, per week, for her services; and when asked why she did not demand more, she replied that Colwell would not pay any more. The plaintiff denied that she ever made any such statement to these witnesses.

Thornton *v.* Grange.

The plaintiff called seven witnesses, besides herself, who testified that her services were worth from $4 to $5 per week. On the part of the defence, eight witnesses testified that the plaintiff was not a good housekeeper; that she kept the house in a filthy condition; that she did not keep Mrs. Colwell or the grandchild of Mrs. C. clean; that there was a bad odor in the house; and that her services were not worth to exceeed $1, before the war, and from $1.25 to $1.50 after it began.

The referee ordered judgment in favor of the plaintiff for $988.61, being for the plaintiff's wages for the whole term she lived with Mr. Colwell, less ten weeks, at the rate of $2.50 per week, less $400, which the plaintiff admitted having received from Mr. Colwell.

From that judgment the administrator appealed.

*L. J. Dorwin*, for the appellant.

*Milton & Merwin*, for the respondent.

*By the Court*, MULLIN, P. J. Should a daughter go to live with her father, at his request, and there was no agreement whatever as to wages, it would be presumed that she went to live with him not as a servant, but as a member of his family, without compensation, except such as a parent ordinarily gives to his children. (*Robinson* v. *Cushman*, 2 *Denio*, 149. *Dye* v. *Kerr*, 15 *Barb.* 444.) When, however, the person taken into the family is not a child, but a more distant relation, the presumption of serving without pay is less strong, and slight circumstances will be sufficient to overcome it. (*Robinson* v. *Raynor*, 28 *N. Y.* 494.) Several of the plaintiff's witnesses testify to conversations with the intestate in which he conceded the plaintiff's right to compensation; and it would seem that $400 at least had been paid to her towards her wages.

It is proper to say that the plaintiff does not say as a witness that she had been paid anything toward her

wages. This subject the plaintiff could not inquire into, as she was not permitted to testify to any transaction between her and the intestate; but the defendant was not restrained from entering upon the inquiry, and failing to show that the $400 had been received as wages, and taking the benefit of the plaintiff's admission that so much had been paid, the referee was justified in assuming that $400 had in fact been paid to her.

The referee has found, in opposition to the testimony of three witnesses, that there was not an agreement between the plaintiff and Mr. C. to pay her $1 per week, and, upon her denial of any admission thereof, that no such agreement was ever made by her.

The judge at Special Term felt constrained to yield to the finding, but did it with great reluctance, as we do in affirming his action.

When an intelligent referee has seen and heard the witnesses, and arrived at a conclusion as to which of them is entitled to credit, it is dangerous to disregard his finding. Upon paper, the evidence of the knave may appear to be more honest than that of a less intelligent but more truthful witness; and it is only by seeing the witnesses, that the true weight to be given to their evidence can be ascertained.

The witnesses who testify to these admissions of the plaintiff are highly respectable ladies, who are incapable of swearing to a falsehood; and had I been the referee, the denial of the plaintiff would not have overcome their evidence.

The parties selected the referee; he has discharged his duty according to the best of his ability; and we do not feel at liberty to disregard his finding.

The finding of the value of the plaintiff's services is upon conflicting evidence, and the evidence is so nearly balanced that it is impossible, under the existing rules relating to the weight to be given to the finding of facts by courts and referees, to disregard it.

The defendant cannot avail himself of the statute of limitations, not having insisted upon it in the stipulation, nor upon the trial. (*Van Vleck* v. *Burroughs*, 6 *Barb.* 341.)

The judgment must be affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, January 7, 1873. *Mullin, Talcott* and *E. D. Smith*, Justices.]