## JOSEPH BUSHNELL, APPELLANT, *v.* THE CHAUTAUQUA COUNTY NATIONAL BANK, RESPONDENT.

*Contract of sale — construction of — National bank — contract — ultra vires.*

This action was brought upon a contract for the sale of oil, which was in the following form: "Sold to Mr. T. A. Shaw * * * for account of B., ten thousand (10,000) barrels of crude petroleum * * * oil, to be delivered at buyer's option, at any time from the 24th day of September, 1874, to the 31st day of December, 1874, * * * to be paid for in cash as delivered, with ten days' notice from buyer to seller * * * if no notice is given contract to expire on the 31st day of December, 1874." *Held,* that the meaning of the provision, that if no notice was given the contract was to expire December 31, 1874, was that the right to call for the oil on ten days' notice, and the consequent obligation to deliver it, should end on that day. It was not intended to provide that the obligations of the purchaser should be annulled by a failure to give the notice, and that there should be no remedy thereafter for breaches existing on that day.

The defendant, a national bank, indorsed upon the back of the contract at the time it was made, that Shaw had on that day deposited in it $2,500, "to be held by us as collateral security for the faithful performance of the within contract." *Held,*

(1) That it was within the power of the bank to enter into the said contract.

(2) That, even if the contract were *ultra vires,* yet as it was not illegal, the defendant was estopped from setting up that defense, as it would be a fraud upon the plaintiff to allow it so to do, he having entered into the contract relying thereon.

APPEAL from a judgment entered on the decision of the Chautauqua Special Term, dismissing a complaint on a demurrer thereto.

The action is brought to recover the sum of $2,500, which the complaint alleges was deposited by one Shaw, with the defendant, a banking corporation, organized under the act of congress passed 3d June, 1864, and which the defendant agreed to hold as security to the plaintiff, for the faithful performance, by Shaw, of a certain contract made by him with the plaintiff to buy and pay for 10,000 barrels of crude petroleum oil. The complaint alleges that Shaw refused to accept and pay for the oil, and that the plaintiff sustained damage thereby to the amount of $2,500, being the excess of the contract-price over the market-price of the oil. The contract with Shaw was in these words: "Titusville, Pa., September 24th, 1874. Sold to Mr. T. A. Shaw, Jamestown, N. Y., for account of Mr. Joseph Bushnell, ten thousand (10,000) barrels of crude petroleum, at one dollar and twenty cents per barrel of forty-two (42) gallons in bulk, oil to be delivered at buyer's option, at any time from the 24th day of September, 1874, to the 31st day of December, 1874, both days inclusive, in United Pipe Line receipts, pipeage paid, and to be paid for in cash, as delivered, with ten days' notice from buyer to seller within the time before delivery. If no notice is given, contract to expire on the 31st day of December, 1874. Brokerage, two and one-half cents a barrel, by seller paid." (Signed) "R. T. Leach, Broker." "Accepted." (Signed) "T. A. Shaw." The agreement of the bank was indorsed thereon, as follows: "Jamestown, Sept. 26, '74. T. A. Shaw has this day deposited in the Chautauqua County National Bank, of Jamestown, N. Y., twenty-five hundred dollars ($2,500) which is to be held by us as security for the faithful fulfillment of the within·contract." (Signed) "D. N. Marvin, Cashier." The complaint alleges that the bank, at the making of said deposit, caused the indorsement aforesaid to be made and signed on its behalf by said Marvin, its cashier, upon the contract accepted by Shaw, and to be delivered therewith to the plaintiffs. And that thereafter the plaintiff signed his acceptance to a counterpart of said memorandum signed by the broker, and the same was delivered to Shaw.

*E. C. Sprague,* for the appellant.

*R. P. Marvin,* for the respondent.

SMITH, J. :

The contract between the plaintiff and Shaw contains this provision : " If no notice is given, contract to expire on the 31st day of December, 1874." The notice referred to is the ten days' notice which the buyer was to give to the seller before he could require a delivery of the oil. No notice having been given, the respondent's counsel claims that the contract and all the rights and obligations created by it are at an end. Doubtless that conclusion would be correct if the words " contract to expire " were used in their literal sense. But the contract thus interpreted was no contract at all, or rather, was a unilateral engagement, binding on the seller only. It imposed no obligation whatever on Shaw, for he had it in his power, by not calling for a delivery, to relieve himself from liability, and that, I understand, is the construction contended for by the defendant's counsel. The construction seems unreasonable, and it should not be adopted except upon very clear grounds. That the parties contemplated a mutual obligation can hardly be doubted. The very first word employed by them, " sold," imports an agreement binding on both parties ; an obligation on the part of Bushnell to deliver the property at the price agreed on, and on the part of Shaw to receive and pay for it. And there is nothing in the agreement indicating that either party was to be relieved from the obligation thus assumed by him, unless the words in question have that effect. The agreement imposed on the seller very serious obligations. He was required to keep the oil on hand, or to procure it whenever notified by the buyer. The brokerage was paid by him pursuant to the terms of the contract. If the contract is terminated he has lost what he paid, and also the entire consideration for which he entered into the agreement. That the parties regarded the contract as binding upon the buyer as well as the seller seems evident from the fact that the buyer deposited $2,500 with the bank, and procured it to become liable to that amount for his performance of the contract, and on the faith of that arrangement the plaintiff entered into the agreement. We incline to the opinion that the true meaning of the clause in question is that the right to call for the oil on ten days' notice, and the consequent obligation to deliver it should terminate on the thirty-first of December. Like the stipulation for ten days' notice, it was inserted for the benefit of the seller. It was

not intended to provide that the obligation of both parties should absolutely be annulled, or that there should be no remedy thereafter for breaches existing on the thirty-first of December. On that day, as the complaint alleges, the plaintiff tendered the oil to Shaw and demanded pay, and the latter refused, of all which the defendant had notice. That, we think, was a breach of the agreement by Shaw, which, by force of the defendant's implied undertaking, gave the plaintiff a right of action against the bank.

Another point taken by the respondent's counsel is, that the contract of the bank was *ultra vires.* By undertaking to hold the money as security for the fulfillment of Shaw's contract, the bank, in our opinion, impliedly promised the plaintiff that, in case Shaw failed to perform, the bank would pay to the plaintiff his damages thereby incurred, not exceeding $2,500. The promise is implied from the terms of the undertaking, and from the fact that the bank caused Shaw's acceptance, with the indorsement of the bank upon it, to be delivered to the plaintiff before he signed the contract with Shaw. The bank had power to receive the deposit. As an incident to that power, it had authority to assent to any terms or conditions respecting the use or disposal of the money deposited which the depositor saw fit to impose, provided they were not illegal or prohibited by the defendant's charter. If Shaw had chosen to deposit the money payable absolutely to the plaintiff or his order, the receipt of it by the bank, and the issuing of a certificate in accordance with those terms, would have been strictly within its legitimate and ordinary business. What difference does it make as to the power of the bank to receive and hold the money, that the deposit was payable to the plaintiff upon the happening of a future contingent event, and that the amount to be paid to him was also contingent and uncertain, but was capable of being definitely ascertained, and was in no event to exceed the amount of the deposit. It is said that a trust was created. In the same sense there is a trust in the case of every bank deposit by one person to the use or credit of another. It is argued by the respondent's counsel that the bank became a surety for Shaw. Not at all. Its obligation was that of a principal debtor. It was indebted to Shaw for the money deposited, and it agreed to discharge its indebtedness by paying to the plaintiff. We are not aware of any provision of law which

incapacitates a national bank from receiving a deposit of money on the terms above stated.

But assuming that the undertaking of the bank was *ultra vires*, yet, as it was not illegal, we think the defendant is estopped from setting up that defense. As has been said, the legal effect of the transaction between the bank and the plaintiff was, that the bank agreed, if he would enter into the contract with Shaw, that he should be compensated out of the money deposited from any damage he might sustain from Shaw's failure to perform. The condition on which Shaw made the deposit was that the bank should undertake to that effect. The agreement of the bank was an appropriation by it of the deposit to the plaintiff's use, by the direction of the depositor. The agreement has been fully executed on the part of the plaintiff by his entering into the proposed obligation to Shaw. It would be a fraud upon him to release the defendant from its part of the agreement, and the bank is therefore estopped from setting up a mere want of power. ( *Whitney Arms Co.* v. *Barlow*, 63 N. Y., 62.)

It was not necessary or proper for the plaintiff to set out the implied promise of the defendant in the complaint. It was enough to allege the facts out of which the implication arises. (*Eno* v. *Woodworth*, 4 Comst., 249 ; *Glenny* v. *Hitchins*, 4 How. Pr., 98 ; *Cropsey* v. *Sweeney*, 27 Barb., 310 ; Moak's Van Santvoord's Pl. [3d ed.], 186, and cases there cited.)

These views, if correct, dispose of the several positions taken by the learned counsel for the respondent.

The judgment appealed from should be reversed, and judgment ordered for the plaintiff on the demurrer, with leave to the defendant to answer in twenty days, on payment of the costs of the demurrer and of this appeal.

MULLIN, P. J., and TALCOTT, J., concurred.

Ordered accordingly.