VOLNEY WHITE, Respondent, *v.* LAFAYETTE KNOWLES, Appellant.

*N. Y. Supreme Conrt, Fifth Department, General Term, April* 12, 1889.

1. *Contract. No implied promise.*—A party is not entitled to recover for board and lodging if furnished, or services if rendered, without any expectation on his part to charge, or on the part of the recipient to pay, therefor.

See Note 10 at the end of this case.

2. *Payment.*—The jury are not justified in finding from the fact that defendant had paid money to plaintiff's wife and so informed plaintiff without stating why or on what account, that this money was paid to her as his agent, or that the defendant intended that it should be received by plaintiff as a payment towards any indebtedness which defendant might owe him.

3. *Bill of exception.*—It is the duty of the appellant to prepare the bill of exceptions, and he should see to it that the points and exceptions upon which he relies, are clearly and distinctly stated.

Appeal from a judgment entered on a verdict, and from an order denying a motion for a new trial on the minutes.

BARKER, P. J.—The plaintiff's wife is the defendant's sister. The defendant's mother, for a period of years preceding her death, made her home with his sister, Mrs. White. The plaintiff is a farmer, residing in the vicinity of the defendant, where the defendant lived, who is an unmarried man. The defendant was never, in any proper sense of the term, a member of the plaintiff's family. He made visits to

the home of the plaintiff, staying a few weeks on some occasion and on others only a few days. The plaintiff's evidence tended to prove that the board was supplied under such circumstances that the law would imply a promise by the defendant to pay for the same.

Upon all the evidence, it might be fairly inferred that there was no intention on the part of the plaintiff to charge the defendant with the board and lodging furnished when on visits to his house. The court charged the jury, in substance, that if they believed the board was furnished by the plaintiff and received by the defendant, without any expectation or promise to receive pay therefor, and was given and received without any such expectation, and the services were rendered by the defendant without any expectation and without any charge for the same, or without expecting any compensation for the services rendered, then the plaintiff would not be entitled to recover, for if the plaintiff did not intend to make a charge, but gave the board he furnished without any expectation of compensation, and as a gift, he could not, after he had given, make a charge of it against the defendant. Nor could the defendant make a charge for the services rendered if they were so performed. Neither party excepted to these instructions.

At the close of the charge, the defendant asked the court to instruct the jury: "That there was no evidence of a contract in the case; that between relatives, more or less remotely connected, that the law does not imply a contract."

In reply to this request, the court said: That is true, but I charge you expressly that this is not one of that class of cases to which the defendant expected.

It is difficult to determine the legal proposition intended to be affirmed in charging the jury as requested, and at the same time, instructing them that this case did not belong to the class of cases referred to by the counsel for the defendant. But in view of the general rules of law applicable to cases of this kind, we think it fair to say, that the learned

judge intended to rule that upon the evidence in this case, the proof did not show that the defendant was a member of the plaintiff's family, so as to present the legal propositions stated by the defendant in his requests. The instructions which were given to the jury in the main part of the charge, was a full statement of the law of the case, as presented by the evidence, and we are unable to discover any error in the special instructions. It is the duty of the appellant to prepare the bill of exceptions, and he should see to it that the points and exceptions upon which he relies, are clearly and distinctly stated. Any doubt or ambiguity in this respect must necessarily result to his injury, for it is the purpose of a bill of exceptions to present the rulings of the court on clear and distinct legal questions. The defendant testified as a witness in his own behalf, that on one occasion he paid to the plaintiff's wife ten dollars, and after his mother's death, which occurred some two months afterwards, he paid her a futher sum of ten dollars; that after such payments had been made, he informed the plaintiff of the sums of money that he had paid to his wife, but did not state why he was induced to pay the same or on what account, and that the plaintiff made no reply to his statements, this being all the evidence which the defendant offered upon the subject; the court, on motion of the plaintiff, struck out the evidence, and the plaintiff excepted. There is nothing in the evidence from which the jury would be justified in finding that this money was paid to the plaintiff's wife as his agent, or that it was the intention of the defendant that it should be received by the plaintiff as a payment towards any indebtedness which he might owe him. The money was not paid to the plaintiff, nor does it appear that he has derived any benefit therefrom, nor can it be inferred that the money was paid to the plaintiff's wife during his absence from his home. It is quite as reasonable to suppose, perhaps, even more so, that the defendant gave this money to his sister as a present, and as some compensation to her for

the care and attention which she had bestowed upon their mother during her last illness.

We think there was no error in striking out this evidence, as it did not prove the fact which the defendant sought to establish by it.

Judgment and order affirmed.

All concur.

## *Note 3.*

### NOTE ON CLAIMS FOR BOARD AND SERVICES BETWEEN MEMBERS OF THE SAME FAMILY, WHERE NO EXPRESS CONTRACT THEREFOR EXISTS.

It is a general rule that the law will imply a promise or agreement to pay, from the mere performance of services, or the furnishing of goods, by one for or to another person, without any express contract in regard to compensation. In such case, an implied agreement arises to pay what the services are fairly worth. To this general rule, there is a well recognized exception in respect to services rendered, and board furnished, by near relatives and members of the same family, on the ground that the law regards such matters as acts of gratuitous kindness and affection. The strength of the presumption that the source of the act lies in the ties of relationship between the parties, varies in proportion to the nearness or remoteness of such relationship. It is presumed that a child lives with the parent, where there is no agreement as to wages, not as a servant, but as a member of the family, without compensation, except such as a parent ordinarily gives to his children. But where the person, received into the family, is not a child, but a more distant relative, the presumption of serving without pay is less strong, and slight circumstances will be sufficient to overcome it. There are cases which hold or intimate that affinity is not such a relationship between the parties as will prevent the law from implying an agreement to pay. In such cases, as in all cases where no express agreement exists, the question of compensation depends mainly upon the fact whether the party rendering the services then intended that they should be paid for, and the other party expected that they should be gratuitous.

The cases decided in this state are referred to in this note and the propositions held fully stated.

The plaintiff in Robinson v. Cushman, 2 Denio, 149, was the widowed sister of the testator, who invited her to come and make his house her home. She went with her daughter, and both remained in his family as members thereof for about fourteen years; they rendered services for him, and were clothed by him, and the daughter educated

as one of his children. There was no evidence of any agreement between the parties except the inference to be drawn from the execution of a note by the testator payable to the plaintiff or her order, but which was never delivered. The referee reported in favor of plaintiff for the amount of her claim against the estate, but the general term reversed the judgment on the ground that there was not sufficient proof that the services had been rendered under such circumstances that the law would imply a promise to pay for them, in order to sustain the report.

In Bowen *v.* Bowen, 2 Bradf. 336, the intestate took his brother, then under age, into his family, boarded, lodged and clothed him. There was no contract of hiring, no demand for wages during the service, no account kept, and no expectation on either side to pay or be paid; and not a word was heard of a claim for services till nearly two years after the intestate's death when the claim was presented to the administrator. It was rejected by the surrogate on the ground that in the absence of an express agreement, the law did not, under the circumstances, imply an agreement to compensate the claimant.

Where a daughter, residing with her mother, has, when asked to pay board, never denied her liability or refused, but recognized the liability and promised to pay therefor, and it was shown that other members of the family were charged for and paid board, the claim in Valentine *v.* Valentine, 4 Redf. 265, was allowed on the ground that there was proof of an intention to charge and pay.

It was held in Valentine *v.* Valentine, 4 Redf. 265, that there is no presumption that professional services, rendered by a physician to his wife's sister, are gratuitous.

In Keller *v.* Stuck, 4 Redf. 294, a sister of the intestate presented a claim against the estate for nursing the deceased, and it was held that either an express or implied promise to pay for the services must be shown, and that the law will not imply a promise to pay for them, as the services were rendered between members of the same family living together.

In Matter of Kelly, Tucker, 28, petitioner's mother came to live with him soon after the death of his wife, and brought his niece with her, and they were treated like other members of his family and remained for the length of time for which he charged his mother's estate. There was no agreement or understanding as to compensation for the board, nor any expectation of pecuniary compensation on the one side, or intention to make it on the other; but upon his mother's death he presented a claim against her estate for her and his niece's board. The claim was rejected by the surrogate on the ground that no implied assumpsit to pay is raised from the mere furnishing of board, where the parties understand or intend that no compensation is to be made

and that the near relationship, in itself, is sufficient to warrant the inference that his acts originated in motives of natural affection.

In Terry *v.* Bale, 1 Demarest, 452, a son lived with his mother until his marriage, and it did not appear on what terms he was living in his mother's family, whether he was to pay board, or give his earnings and services for his board; and it was held that, unless an express contract to pay is proved, board furnished and services rendered between near relatives do not raise an implied promise to pay for the same, as in the case of strangers.

Where a person did in fact support and maintain his step-son in his family, and treated him as a member of it, standing in *loco parentis* to him, it was held in Williams *v.* Hutchinson, 5 Barb. 122, that under such circumstances, the law will not imply a promise to pay for services rendered by the step-son, nor permit a recovery therefor, unless an express promise is shown; or something to prove that such was the expectation on both sides; and that the fact of his standing in *loco parentis* effectually repelled all presumption of service for hire or wages, and renders an express promise indispensable to the maintenance of an action to recover its value.

In Williams *v.* Hutchinson, 3 N. Y. 312, it was held that a step-father, who assumes the relation of a parent to the child of his wife by a former husband, and faithfully discharges the duties of that relation by receiving such child into his family and educating and supporting him on the same footing as his own children, is not bound, where there is no express agreement, to pay wages to the step-child, and the latter cannot maintain an action against the step-father for services rendered while a minor, though the value of such services may exceed the expenses of such education and support; that, under such circumstances, a promise to pay wages will not be implied.

In Dye *v.* Kerr, 15 Barb. 444, a daughter lived with her father as a member, and was taken care of by him as one of his family. Her wants were supplied, and no accounts were kept by either against the other. There was no agreement for compensation for her services, nor did she at the time, expect any reward or suppose that any pecuniary obligation was to be incurred thereby. It was held that, under such circumstances, the law will not imply a promise to pay for the services, nor permit a recovery therefor.

A woman who has lived with a man as his wife, supposing herself to be such, was not permitted in Cropsey *v.* Sweeney, 27 Barb. 310, on discovering that the marriage between them was void, to recover for her services, upon an implied promise to pay for them.

Where a daughter, after arriving at the age of twenty-one years, continued a member of her father's family, rendering services for him and receiving her support and maintenance from him, as before, with

out any understanding between them that she should be paid, it was said, in Green *v.* Roberts, 47 Barb. 521, that the law will not allow her to recover for her services, on the ground that the relation of parent and child, and not of master and servant, existed between them. But if there was a mutual understanding that she was to be paid for her services, so as to constitute the relation of master and servant between them, she, in the absence of an express agreement as to the amount, is entitled to recover what the services were reasonably worth.

In Wilcox *v.* Wilcox, 48 Barb. 327, a person, upon his marriage, lived, at his wife's father's and made his home there, by invitation and common consent, without any claim, suggestion or expectation, by any one that he was to pay for the board of himself and wife; and it was held that the law will not imply a promise to pay for board or services, among members of the same family and persons more or less intimately or remotely related, where they are living together as one household, and nothing else appears.

In Thornton *v.* Grange, 66 Barb. 507, the plaintiff, at her uncle's request, went to live with him in his family, and remained with him for several years, rendering services as nurse and housekeeper. No agreement as to compensation was made, but evidence was given showing that her uncle had admitted an intention to pay her something; and it was held that, when a relative, more distant than a child, goes to live with a person at his request, the presumption that such relative lives with such person as a member of the family, and not as a servant, is less strong than in case of a child; and that slight circumstances will be sufficient to overcome it.

In Shurley *v.* Vail, 38 How. 406; 3 Abb. Dec. 313, note, the plaintiff went to live with the testator when about thirteen years of age, being left with him by her father, who thereafter did nothing more for her. Her mother was dead, and she lived with the testator, doing chores, milking, driving cows, and assisting in the housework, till about a year after she became of age, when she married and left with her husband. She was sent to school by testator three or four winters, boarded and clothed by him all the time she was with him; and it was held that she was not entitled to recover for her services on the ground that she was provided and cared for as a member of his family, without any idea of paying or receiving wages otherwise.

And it was held in this same case under the title of Shirley *v.* Bennett, 6 Lansing, 512, when it came a second time before the general term, that the law is well settled that a party cannot recover for services rendered where he has lived with another as a member of his family, to be provided for, brought up and educated as such, where that relation has continued during all the time in which such services were rendered.

Note on Claims for Board and Services.

In Cooper *v.* Turner, 2 Hun, 515; 5 N. Y. S. C. 711, a widow resided with her son on a farm after he became of age, and kept house for him, and after his death she presented a claim against his estate containing an item for services rendered by her as his housekeeper. There was no agreement that she should be paid for such services. The surrogate allowed the items, but on appeal the general term held that it was improperly allowed on the ground that, under such circumstances, the law would not imply an agreement to pay wages.

In Van Kuren *v.* Saxton, 3 Hun, 547; 5 N. Y. S. C. 566, plaintiff's sister-in-law became a member of his family on the invitation of his wife, and with his assent, to remain with her children until she could do better. She performed services in the household and received board for herself and children, and no intimation was given by either party that pecuniary compensation should be made by one to the other, and it was held that the sister-in-law did not occupy the position of a servant, and was not liable to pay for board; that transactions of this kind between relations stand on a different footing from that between persons who are not bound to each other by such ties; in the latter case the law may, in the absence of special circumstances, imply mutual promises to pay, while in the former case it will not raise such promise.

The implication of a promise to pay what services are reasonably ·th from the fact of rendition and acceptance, may not be repelled .aolly, when the service is rendered to a parent by a son of full age, but the legal presumption of an obligation to pay is less strong, where the relation of parent and child, exists, than in the case of dealing between persons not bound to each other; and if, to the relationship, there are added other circumstances tending to show, as a matter of fact, that the services were gratuitously rendered, and without any expectation, at the time, on either side, that payment was to be made, the law will not imply a contract for compensation. Ross *v.* Ross, 6 Hun, 182; Moore *v.* Moore, 21 How. 211; 3 Abb. Dec. 303; estate of Kelly, 1 Tucker, 28.

Where members of the same family live together, an express, distinct and well understood bargain to pay for board on the one side, or wages on the other, must be clearly proved before such a claim will be allowed. Sullivan *v.* Sullivan, 6 Hun, 658.

Ordinarily, where services are rendered by one person for another, without any agreement in respect to compensation, the law will imply an agreement to pay what the services are fairly worth. Gallaher . Vought, 8 Hun, 87. A well recognized exception to this general rule is made in respect to services rendered by near relatives and members of the same family, on the ground that the law regards such services as acts of gratuitous kindness and affection. Id. In this

case, the plaintiff and defendant's wife were cousins; and not, therefore, related at all except by affinity, and such relationship was held not to be sufficiently near to place the parties within the exception to the general rule of implied contracts. The question in such cases where there is no express agreement, is whether the services of the plaintiff were performed under the expectation that they would be paid for, or whether both parties expected and intended that they should be gratuitous.

In Reynolds *v.* Robinson, 64 N. Y. 589, plaintiff's wife was the adopted daughter of, and brought up by, the testator, who, from the marriage to the time of his death, boarded with plaintiff and paid for his board. During a portion of this period, testator was afflicted with a cancer and, by reason thereof, required a great deal of care, nursing, bathing, and washing of linen and clothing. In an action brought, after testator's death, to recover the value of such services, it was held that there was little room for saying that testator was simply living with plaintff as a member of his family, and that the services were rendered gratuitously by plaintiff's wife, as an adopted daughter.

In Markey *v.* Brewster, 10 Hun, 16, the deceased, on being taken sick and helpless, sent for the plaintiff who was her daughter and had a family of her own with whom she was then living some miles distant, to come to her at once and take care of her. Plaintiff for the four following years gave substantially all her time to nursing and taking care of her mother who repeatedly during this time said that plaintiff should be well rewarded. In an action brought by plaintiff, after her mother's death, to recover the value of such services, it was held that this case was not to be classed with the ordinary cases of services rendered by one member to another member of the family, as plaintiff was not a member of her mother's family at the time of her employment, and never legally ceased to be a member of her own household, though absent at her mother's, in her mother's service, and that she was entitled to recover. This case was affirmed in 70 N. Y. 607, without opinion.

Where a son and his family lived with his father, it was held, in Weatherspoon *v.* Weatherspoon, 49 N. Y. Super. 152, that the mutual relations and obligations of the parties lead, in the absence of an agreement, to the presumption that no charge for the son's board was contemplated.

In Roblee *v.* Gallentine, 19 W. Dig. 153, it was held that, in the absence of an express agreement, services performed by a woman as a member of the family of her father-in-law are impliedly gratuitous, and that a note given therefor is without valuable consideration.

In Webster *v.* Nichols, 21 W. Dig. 566, it appeared that testator, before becoming a member of plaintiff's family, asked the consent of

both plaintiff and his wife, and afterwards told plaintiff that he had made a bargain with his wife. He was broken in health, nervous, irritable and a hypochondriac. He was a cousin of plaintiff's wife's father, and had no family of his own. In an action for services against his executors, it was held that plaintiff was entitled to recover on the ground that a contract for compensation should be implied, as the kinship between the deceased and plaintiff was remote and only by affinity. See also Gallaher v. Vrought, 8 Hun, 87.

In Carpenter v. Weller, 15 Hun, 134, the plaintiff, her husband and their children lived for twenty-three years with her brother in his house as one family. She helped in the ordinary house, and dairy work. There was no promise or agreement of any kind to compensate her for her services, and no claim for compensation was heard of during her brother's lifetime, but after his death such claim was presented to his administrators, and it was held that, in the absence of an express agreement for remuneration, she could not recover.

The rule is that, as between members of the same family, the law will not imply a promise to pay for services rendered, or board and lodging furnished, but, on the contrary, will assume that they were rendered and furnished gratuitously unless an express promise is shown, or evidence given showing that there was an expectation on both sides to pay. Lynn v. Smith, 35 Hun, 275; Dye v. Kerr, 15 Barb. 444; Ross v. Hardin, 79 N. Y. 90, 91. In the first case above cited, it was held that a receiver, appointed in proceedings supplementary to execution, cannot maintain an action against the debtor's wife to recover the value of services rendered by him in carrying on her separate business, in the absence of an express agreement on her part to pay him therefor. See also Ackerman v. Ackerman, 41 Hun, 638; Roblee v. Gallentine, 19 W. Dig. 153; Wilcox v. Wilcox, 48 Barb. 327; Sullivan v. Sullivan, 6 Hun, 658; Williams v. Hutchinson, 3 N. Y. 312; Robinson v. Cushman, 2 Denio, 149.

In Ackerman v. Ackerman, ante, a ward lived for some time in the family of her guardian as a member thereof, and during this time rendered valuable services in his family, and the surrogate, on the guardian's accounting, rejected a claim against the ward for her board during his guardianship, and his decision was affirmed by the general term.

Where a person lives with a relative as a member of the family under circumstances showing clearly that there was no expectation on either side that board should be paid, the law will not imply a promise to pay therefor, Collyer v. Collyer, 113 N. Y. 442. In this case, both parties understood that the defendant's intestate was living with plaintiff as his sister and as a member of his family, and it was held that, under such circumstances, the law will not convert her relations to him into

that of a boarder, and imply a promise on her part to pay for board. See Williams *v.* Hutchinson, 3 Id. 317; Ross *v.* Ross, 6 Hun, 184; Carpenter *v.* Weller, 15 Id. 134; Lyon v. Smith, 35 Id. 275.

In Knowles *v.* White, reported above, defendant who was a brother of plaintiff's wife, was in the habit of coming to plaintiff's house and staying for periods ranging from a few days to several weeks at a time. Plaintiff's evidence tended to show that the circumstances were such that the law would imply a promise to pay for his board during his visits; but from all the evidence it might be inferred that plaintiff had no intention of charging for the board. The charge of the judge in response to a request, that this was not one of the class of cases in which the general rule, "that between relatives more or less remotely connected the law does not imply a contract," was applicable, was held correct. See Gallaher *v.* Vrought, 8 Hun, 87. The case was presented to the jury upon the issue, whether or not the plaintiff intended to charge and the defendant expected to pay, for the board, at the time it was furnished; and the general term held that it was properly submitted.