By the Court.—O’Gorman, J.
—The plaintiff is the widow and executrix of James Wotherspoon, a son of the defendant, who died May 2,1881 ; and the action is brought by her as such executrix to recover from the defendant the said sum as being money which belonged to her testator and received by the defendant and wrongfully detained by him. Before May 1, 1866, the «deceased had been a clerk in the employment of the firm of “Wotherspoon & Co.,” which then consisted of George Wotherspoon, D. A. McTavish and D. O. Wotherspoon, as partners. On that day a memorandum was signed by them, of which the following is a copy :
“ Memoeahdum.—From the first of May, 1866, the following are the shares of the respective partners of the firm of Wotherspoon & Co., of the net profits of the business, all expenses, salaries and subsidiary allowances being first deducted: D. A. McTavish and D. O. Wotherspoon to *155 receive one-fourth each and George Wotherspoon- one-half.
“New York, 17th May, 1866.
(Signed) G. Wotherspoon,
D. A. McTavish,
D. O. Wotherspoon.
“Allowance to James Wotherspoon, $2,000 per annum, and 5 per cent, of net profits.”
On March 5, 1867, the deceased James Wotherspoon married the plaintiff, and on the same day he was, by direction of the defendant, credited on the books of the said firm with the sum of $10,000 to be placed in the concern of Wotherspoon & Co. Soon afterward, the deceased became incapacitated, by reason of illness, from rendering any service to the firm, and in 1872 he and his wife went to Europe, where they remained until June, 1874. They then returned and took up their abode with the defendant, who occupied a house on Staten Island. The deceased had become paralyzed and imbecile, and so remained until his death, which occurred on May 2, 1881. From the time of his return he and his wife and children continued (with the exception of a few months), to reside in the house of defendant.
In 1870, McTavish, and in 1872, D. O. Wotherspoon left the firm of Wotherspoon & Co. From 1872 to 1876, the business was carried on by defendant alone. In 1880, the firm was composed of George Wotherspoon and F. W. Scherr, the latter having been a partner since May, 1876. He left the firm on December 6, 1880. From December 6, 1880, to January 1,1881, the firm was composed of George Wotherspoon alone, when Mr. Allien went in with him.
From the time of the signing of the memorandum above set forth, regular accounts were kept on the books of Wotherspoon & Co., between that firm and the deceased, and copies thereof were regularly rendered to him. In the first of these accounts so rendered, deceased is credited with said sum of $10,000 cash, under date of March 5,1867, with interest thereon, $403.96—with salary $2,000—with 5 per cent, from net profit $2,417.60, and with a balance in *156 his favor of $10,166.46 on January 1, 1868. Further accounts are in evidence, carrying on this balance crediting the deceased with interest on the balances in his favor, and for sums due to him as his percentage of the net profits, debiting him with various sums paid on his account, and showing a balance in favor of the deceased on January 1, 1875, of $12,653.70. After January 1, 1869, no amount was-credited to the deceased on account of allowance, but his percentage of the net profits was increased from 5 to 15 per cent. These accounts passed through defendant’s hands, and were prepared by his direction and their correctness testified to by Scherr, the book-keeper of the firm, who became a partner in May, 1876.
About July, 1880, a year before her husband’s death, the plaintiff applied to the defendant for a settlement of accounts, and received from the defendant an account in writing purporting to show the pecuniary relations between her husband and the firm of “Wotherspoon & Co.,” on April 30, 1880. This account shows a balance in favor of deceased on 'that date, of $7,300.50, after charging him with various sums of money—including $1,600 under the head of “house expenses per Gr. W.” and this entry is dated April 30, 1880. The plaintiff alleges in her complaint that “ having no means of verifying said account, and being ^informed that the books of said firm had been destroyed, she is willing to accept the said account as correct, except as to the sum of $1,000 charged there on April 30, 1880, for “house expenses for Gr. W.,” which sum plaintiff states on information and belief should not be charged in said account, and is not a proper and valid charge or claim against the estate of said James Wotherspoon. This charge of $1,600 was a subject of discussion, from time to time, between plaintiff and defendant, until October, 1880, when she proposed to remove her husband from the defendant’s house, and herself to return to her parents, to which defendant objected and said they had better go on as they were till spring. Afterwards, about March or April, 1881, she received from defendant a further account in writing *157 as between Wotherspoon & Co., and James Wotherspoon,' carrying forward the last balance, $7,300.51—charging against said James Wotherspoon various further sums for expenses incurred by her after the date of the former account, and including one other charge under the head of “deducted proportion of bad debt in 1868, 5 per cent, on $20,000 and interest $700—$1,700,” and reducing the balance in favor of the deceased on December 31,1880, to $4,606.84. No evidence, however, was offered to substantiate the last charge.
It is in evidence that the plaintiff took care and management of defendant’s establishment and kept house for him, a service which perhaps he needed, being a man between eighty-five and eighty-six years of age.
The learned trial judge disallowed this charge of $1,600 for “house expenses,” set forth in the account dated April 30,1880, but allowed a charge of $1,285.67, being for moneys expended for the plaintiff and family, after April 30, 1880, and found a balance due to her, as executrix of her deceased husband, by defendant, of $8,443.89, and being in the defendant’s hands on April 30, 1880.
At the close of the plaintiff’s case, the defendant moved for a dismissal of the complaint on the ground, among others, that plaintiff’s claim should have been made against the partners comprising the firm of “ Wotherspoon & Co.” at the time of the beginning of the accounts; and that there was no proof of any individual liability on the part of the defendant, George Wotherspoon, in favor of the plaintiff’s testator, and also because the accounts produced were rendered by the said firm, and are not sufficient evidence to charge the defendant individually with the balance appearing therein. Defendant also claimed that the amounts placed to the credit of said James Wotherspoon on the books of the firm of “Wotherspoon & Co.” by direction of the defendant, were never reduced to possession by said James Wotherspoon, and said amounts were never transferred to him; and that, as between the defendant and said James Wotherspoon, there was not a valid *158 •gift of said amounts. Defendant also claimed that he was entitled to charge the estate of James Wotherspoon for his board and lodging for six years preceding his death, as a counter-claim in this action.
This is an action -for money of the plaintiff’s testator received by the defendant as a member of and representing the. firm of Wotherspoon & Co., and wrongfully retained by him, and the question is whether there is sufficient evidence on which that charge can be sustained.
As far as the firm of Wotherspoon & Co. is concerned, their accounts rendered from time to time are sufficient admission that they recognized the right of James Wotherspoon to have credit for $10,000, as deposited in his name in the concern—for interest on the same from year to year —and credit also on the other sums regularly entered in the books of the firm for his percentage of the profits. These accounts showed a balance in his favor on January 1, 1875, of $12,653.70.
The account rendered by the defendant on behalf'of Wotherspoon & Co., and in their name, to the plaintiff, in July, 1880, showed a balance in favor of her testator oh April 30, 1880, amounting to $7,300.51. This is an admission on the part of the defendant as a member of that firm, that he held that amount of the testator’s money in his hands.
It is alleged in the complaint that he was the only member of the firm, which was carried on by himself alone, at the time of the commencement of the action. But if that were otherwise, and there were in fact other members of the firm who should have been joined as defendants, yet that objection must be deemed to have been waived by reason of the failure of the defendant to take advantage of it either by demurrer or by answer (Code, §§ 498, 499 ; Kings-land v. Braisted, 2 Lans. 17). ,
But apart from that waiver of the objection, there are " other reasons for holding that the accounts rendered by or in the name of the firm bind the defendant as fully as if they were rendered in his own name. When in June, 1881, he received letters from the plaintiff inquiring about the" *159 state of her husband’s accounts, none of the persons who had been partners when the account between James Wotherspoon and “ Wotherspoon & Co.” was opened, had any connection with that firm ; one of them had left it in 1870, and the other in 1872, and there is no evidence that. they retained any interest in the firm or were liable for its transactions. From 1872 to 1876, the defendant had carried on the business alone; Scherr joined the concern in 1876, and left it in December, 1880; and Allien, who had been its book-keeper, seems to have become a partner in January, 1881. Under these circumstances, and in answer to plaintiff’s request, an account is furnished to her, entitled : “Mr. James Wotherspoon, in account with Wotherspoon & Co.,” commencing on the credit side with an entry of a balance in his favor of $9,841.23, and closing with a credit in his favor, “By balance carried forward to new account, $7,300.51.” In this account James Wotherspoon is debited with “ House expenses per G. W., $1,600,” and if the firm name of “ Wotherspoon & Co.” therein, represented any persons or person other than the defendant, this entry, purporting to be an entry of moneys paid out by him individually for the use of James Wotherspoon, would have been out of place, and wholly inconsistent with the argument of the defense, that “ Wotherspoon & Co.,” and the defendant, George Wotherspoon, were two separate and distinct entities.
The allegation in the complaint that the “ former partners had, on their withdrawal from the firm, respectively settled with defendant, so that he vras to retain the assets and business of the firm, including the capital and money of James Wotherspoon, and the profits belonging to him,” is not in the answer distinctly or definitely denied, and there was, in my opinion, enough to warrant the trial judge in inferring, that for all purposes of this action, the defendant and “Wotherspoon & Co.” were one and the. same, and that the money of James Wotherspoon, $7,300.51, admitted to be in the hands of that firm to the credit of James Wotherspoon on April 30,1880, was in fact in the hands *160 of the defendant, and that the admission in the account of “ Wotherspoon & Co,” was in fact and in law the admission of the defendant.
The plaintiff’s claim then rests wholly on the account' rendered by the defendant as of April, 1880, and the admission of the balance therein set forth in favor of testator. But that admission, she must take in its entirety, and accept it as it stands, allowing all debits as well as credits, including the charge of $1,600 for.“household expenses.”
There is no claim on the part of the defendant that the account rendered as of April 30, 1880, was in any way incorrect ; on the contrary, the balance therein, in favor of testator, of $7,300.51, is carried into a later account furnished by defendant, containing entries up to December 31, 1880. This account must be regarded as conclusive and binding on the defendant (Harley v. Eleventh Ward Bank, 76 N. Y. 618).
As to the later account,1 plaintiff admitted all charges on the debit side for payments made after date of the former account, April 30, 1880, and they are all charged against her in the findings of fact, excepting the charge of $1,700 for an alleged bad debt in 1868, which charge the plaintiff disputed, and in proof of which no evidence was offered.
In this view of the case, the claim on the part of the defendant that the sums entered by his direction on the books of the firm to the credit of James Wotherspoon are not an executed or valid gift or received into possession, becomes unimportant, especially when coupled with the allegation in defendant’s answer, that the sum of $10,000 first put to his credit had in fact been spent for his benefit.
As to the claim set up on the part of defendant by way of counter-claim, on account of board, &c., of the testator, it was properly disallowed. There was no evidence of any agreement on the subject, and the mutual relations and obligations of the parties between one another would, in the absence of an agreement, lead to the presumption that *161 no such charge had been contemplated (Williams v. Hutchinson, 3 N. Y. 312).
Except as to the disallowance of the charge of $1,600, I see no error in the rulings of the trial judge
The judgment should therefore be reversed and a new trial ordered, unless plaintiff stipulates to deduct from the judgment the sum of $1,600, and interest from April 30, 1880, in which case the judgment, as modified, should be affirmed without costs of this appeal.
Ingbaham, J., concurred.